**Marcus JEFFERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–95–00035–CR.

Court of Appeals of Texas, Texarkana.

Argued Oct. 5, 1995.

Decided Oct. 11, 1995.

Discretionary Review Refused Jan. 24, 1996.

---

John M. Cornelius, Marshall, for appellant.

James P. Finstrom, Jefferson, for appellee.

Before BLEIL, GRANT, and CHADICK, JJ., T.C. CHADICK, Justice, Retired Sitting by Assignment.

## OPINION

BLEIL, Justice.

Marcus Jefferson appeals his conviction for the offense of engaging in organized criminal activity by committing robbery. TEX.PENAL CODE ANN. § 71.02 (Vernon 1994). On appeal, he contends that the trial court erred in refusing to charge the jury on the lesser included offense of robbery, in admitting hearsay evidence, and in refusing to admit allegedly exculpatory evidence from co-defendant Timothy Durden. He also maintains that the conviction was based solely on accomplice witness testimony. We find no error and affirm.

Jefferson's case was consolidated for trial with the cases of Antonio Durden and Timothy Durden. The jury convicted Jefferson of engaging in organized criminal activity and sentenced him to fifty years' confinement.

Truck driver Ralph DeBolt stopped at a laundromat in the city of Jefferson shortly before midnight on September 6, 1994, to use a pay telephone. Six black men in a light blue Chevrolet automobile passed DeBolt in the parking lot of the laundromat. As DeBolt was talking on the telephone, a black man approached him and asked if he was going to be using the telephone much longer. Two more black men joined the first. The

three men beat DeBolt and took his wallet, which contained about $70.00 and some photographs. After his attackers left, DeBolt went to a nearby Chevron convenience store for help. DeBolt saw another black male standing at the Chevron station who looked like he "knew what was going on."

Phillippe Hollomon, the driver of the blue car, testified that he, Jefferson, Timothy Durden, Antonio Durden, Chris Justiss, and Phillip Washington were riding around town and saw DeBolt. Timothy Durden told Hollomon to pull the car over because Timothy Durden wanted to "jack" or rob the truck driver. Hollomon stopped the car. Timothy Durden, Jefferson, Antonio Durden, and Washington got out of the car. Hollomon waited a few minutes, then left.

Roy Reynolds, who worked at the convenience store where DeBolt went for help, saw Jefferson walking outside the store on the night of the robbery. He also identified Jefferson in a videotape taken by security cameras located at the Chevron store.

■ Jefferson contends that the trial court erred in refusing to charge the jury on the lesser included offense of robbery. A defendant is entitled to a charge on a lesser included offense if the lesser offense is included within the proof necessary to establish the charged offense and there is some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim. App.), *cert. denied,* —— U.S. ——, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). The parties do not dispute that proof of the lesser offense, robbery, was included within the charged offense: engaging in organized criminal activity by committing the offense of robbery.[1] The first prong of the test is satisfied.

■ Jefferson asserts that the second prong is also satisfied because there was no evidence that he acted with the intent to establish, maintain, or participate in a combination by committing the offense of robbery. A combination is three or more persons who

---

1. A person commits the offense of engaging in organized criminal activity if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he com-mits or conspires to commit one of a specified list of offenses. TEX.PENAL CODE ANN. § 71.02(a) (Vernon 1994).

collaborate in carrying on criminal activities. TEX.PENAL CODE ANN. § 71.01(a) (Vernon 1994). There is no evidence than any fewer than three participants acted to rob DeBolt.

As for Jefferson's intent, Hollomon testified that Timothy Durden, after expressing his desire to rob someone, turned to Jefferson and asked "are you down?" meaning "are you with me?" Jefferson did not verbally reply, but did step out of the car and accompany Timothy and Antonio Durden. The evidence established that the three men agreed to rob DeBolt and carried through on this agreement. Jefferson's defense strategy focused on the issue of the identity of the three robbers, not on Jefferson's intent. There was no evidence that Jefferson, if guilty at all, was guilty only of robbery. Therefore, the trial court did not err in refusing to charge the jury on the offense of robbery.

Jefferson also maintains that the trial court erred by admitting the hearsay testimony of Phillip Washington through the testimony of accomplice witness Phillippe Hollomon. Washington was one of the men who had gotten out of the car, but he did not accompany the Durdens and Jefferson when they headed toward DeBolt. The State asked Hollomon what Washington, whose nickname is "P.A.," said on the night of the robbery:

Q What did P.A. say?

A P.A. say he he [sic] wasn't going to do it.

. . . .

Q Did he say they were doing it.

MR. GLEASON [co-defendant Timothy Durden's attorney]: Your Honor, before he answers I'm going to object to hearsay. He's asking about statements not of a defendant in this case. Wouldn't be an admission, so I object to any statements that P.A. made.

THE COURT: It's overruled.

Q . . . Do you recall whether or not P.A. said anything about whether they were doing it or not?

A Yes, sir.

Q What did he say?

A He said well, he saw the man get out of the diesel with a gun and he saw Marcus and them headed toward the direction of Dairy Delite.

Q So he said he saw the man getting out of the truck and he saw Marcus and them running off. Would that be Marcus and Antonio and Timothy?

A Yes, sir.

Q Running off toward the Dairy Delite.

A Yeah.

No further objections were made.

 Although Jefferson refers this court to a specific page of the statement of facts, he does not specify what testimony he is complaining of, and he cites no authority for his point of error. See TEX.R.APP.P. 74(f). Points of error which are inadequately briefed present nothing for review. State v. Gonzalez, 855 S.W.2d 692, 697 (Tex.Crim.App.1993); see also Robinson v. State, 851 S.W.2d 216, 222 n. 4 (Tex.Crim.App.1991), cert. denied, —— U.S. ——, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994).

Furthermore, the question to which the hearsay objection was interposed went unanswered, and defense counsel did not ask for a continuous or "running" objection. See Ethington v. State, 819 S.W.2d 854, 858–59 (Tex.Crim.App.1991). Assuming Hollomon's subsequent testimony is the testimony about which Jefferson is now complaining, it was not the subject of a proper objection. No error is preserved. See TEX.R.CRIM.EVID. 103(a)(1); TEX.R.APP.P. 52(a); Ethington, 819 S.W.2d at 858.

Jefferson further maintains that the trial court erred by refusing to admit a statement made by co-defendant Timothy Durden that was allegedly exculpatory with respect to Marcus Jefferson. Following his arrest, Timothy Durden asked to speak with Lynn Parker, an investigator with the district attorney's office. Jefferson's defense counsel offered Durden's statement at trial, but the trial court excluded it.[2]

2. The essence of Durden's statement is as follows:

PARKER: Okay. You want to talk to me. Okay. All right. Go ahead. You talk about

On appeal, Jefferson asserts that the statement was admissible as a statement against Durden's penal interest, thus making it exempt from application of the hearsay rule. A statement is not excluded by the hearsay rule if, at the time it was made, the statement so far tended to subject the declarant to criminal liability that a reasonable man in the declarant's position would not have made the statement unless he believed it to be true. TEX.R.CRIM.EVID. 803(24). A statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. *Id.* The standard for appellate review of a trial court's decision to exclude a hearsay statement under Rule 803(24) is whether the trial court abused its discretion. *Cunningham v. State*, 877 S.W.2d 310, 313 (Tex.Crim.App. 1994).

Factors to consider in applying Rule 803(24) include whether the guilt of the declarant is inconsistent with the guilt of the accused; whether the declarant was so situated that he might have committed the crime; the timing of the declaration and its spontaneity; the party to whom the declaration was made; and the existence of independent corroborating facts. *Id.* at 312. The trial court may consider evidence which undermines the reliability of the statement as well as evidence corroborating its trustworthiness. *Id.* The burden is on the party seeking admission of the statement to establish corroborating circumstances clearly indicating trustworthiness. *Davis v. State*, 872 S.W.2d 743, 749 (Tex.Crim.App.1994).

The surrounding circumstances in the present case cast doubt on the trustworthiness of Durden's statement. Durden's statement or version of events on the night of the

whatever you want to talk about.

DURDEN: Okay. Um, about the robbery. Um ...

PARKER: On the robbery.

DURDEN: On the robbery, yes sir. We'd been riding with Phillip (sic) Holloman (sic) and uh Phillip (sic) pulled to the store 'cause P.A. had to use the bathroom which was Phillip Washington. He said he had to use the bathroom and my uncle, Antonio, had to use the bathroom also. So, they got out the back to go to the bathroom. And Marcus had to get out to let me out to go to the bathroom so I was going, I was going to the bathroom but I was gonna go to the phone first. So I walked to the phone and uh and there was a man on the phone. I asked him, um, I said, um, "How long you gonna be on the phone?" And, um, first he said, um, at first he didn't answer me. First he didn't answer me. Then I tapped him on the shoulder and said, "Excuse me. How long you gonna be on the phone?" like that. And he just turned around and looked at me like, like um "what you want?" and stuff like that. And I said, "How long you gonna be on the phone?" and he said um first he said "Not long" like that. Then I, I stood there for a long time. Then I said, "Um, could you let me use the phone? And then, um, you can get the phone back" like that. Then he just started, he started talking to us like, like he just started talking all crazy and stuff. And I didn't say nothing; I didn't say nothing. Then somehow he was on the phone, I guess it was to his wife and I guess she asked him who was that and something and he said, "Two black guys" like that. And we just we didn't say nothing. And then he said, he kept talking to her, and then he said, uh he started laughing and then he said, "Yeah, the two niggers still here" like

that. Um, I looked at Marcus and I said, "What'd he say?" like that. And then I I tapped him and I said, "What'd you say?" And he said, um, he said, "I would appreciate it if you niggers would go on and leave me alone" like that. And the next thing I know I had hit him and um Marcus grabbed me and was pulling me back. And then uh but he couldn't hold me and then I hit him again and then he started falling. And then Marcus pulled me and then my uncle, Durden, ran over there and grabbed me and they pulled me. And then I kept trying to get him but they wouldn't let me. Then uh, then um, then he said, I think it was either my uncle or Marcus, said, "Tim, man, there go the police; there go the police." And I took off running. They ran right behind me. That was it. They didn't, didn't anybody grab no wallet or nothing like that. Didn't anybody, Marcus and my uncle Durden, neither one of them touched the man and then he, they both grabbed me. And the man, when he went to the Court, I told my lawyer when he was telling, telling the story, I told him that the man was telling a story. 'Cause when my uncle Durden ran over there, he just grabbed me. He grabbed me 'cause Marcus couldn't hold me by hisself. And the man, uh the man when he, he had fell, I guess, yeah he fell, and then uh, while I was like standing right there and Marcus was holding me and I was trying to get him again. And Marcus wouldn't let me and then one of them said, "There go the police" like that and I took off running and then they was, at first they was still standing there and then they took off running like that. They took off right behind me.

robbery was self-serving. Durden asked to speak to an investigator with the district attorney's office. Durden made the statement while he was in jail and with the knowledge that he faced charges for his involvement in the DeBolt robbery. Durden and Jefferson were tried together for engaging in organized criminal activity. Durden's statement is a confession that he assaulted De-Bolt, but Durden tried to excuse even this conduct by suggesting he had been provoked by DeBolt.

Durden's statement tended to improve his situation, not worsen his predicament. In denying the tendered statement, the trial court noted that it was essentially exculpatory and thus outside the hearsay exception. The trial court did not abuse its discretion in refusing to admit the statement as an exception to the hearsay rule.

■ Jefferson further contends that his conviction is based only on accomplice witness testimony without any corroborating evidence that tends to connect him with the offense. A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed. TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979). To determine whether accomplice witness testimony is corroborated, we eliminate all accomplice evidence from the record and determine whether the other inculpatory facts and circumstances in evidence tend to connect the defendant to the offense. *Munoz v. State,* 853 S.W.2d 558, 559 (Tex.Crim. App.1993).

■ The evidence tends to show that Jefferson was part of a combination that, as its plan and goal, committed the offense of robbery. DeBolt testified that he was robbed by three men. DeBolt's testimony also accounted for all six of the men who had been in the blue Chevrolet prior to the robbery: two men remained in the car, one stayed around the corner of the Chevron station, and three of the men robbed DeBolt and then ran away. Although DeBolt could not positively identify Jefferson as one of the men who robbed him, DeBolt identified the clothing that Jefferson had worn on the night of the robbery as being similar to that worn

by one of his assailants. Videotape from the security camera posted at a nearby convenience store shows Jefferson walking toward the crime scene shortly before the robbery, and Jefferson was also identified by the store clerk. Jefferson and Timothy Durden were arrested together at Jefferson's home shortly after the robbery.

■ Corroborating evidence does not need to establish the guilt of the accused or directly connect him to the crime; it need only tend to connect the accused with the offense committed. *Cox v. State,* 830 S.W.2d 609, 611 (Tex.Crim.App.1992). Proof that an accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, can be sufficient corroboration to support the conviction. *Richardson v. State,* 879 S.W.2d 874, 880 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995); *see also Cox,* 830 S.W.2d at 611. There is sufficient corroborating evidence tending to connect Jefferson with the offense of engaging in organized criminal activity.

We affirm the judgment of conviction.

CORNELIUS, C.J., not participating.