Thomas HOWARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–96–0194–CR.

Court of Appeals of Texas,
Amarillo.

April 24, 1997.

**304**

David Martinez, Law Offices of David
Martinez, Lubbock, for appellant.

Terry D. McEachern, Robert W. Kinkaid,
Jr., Hale County Dist. Atty., Plainview, for
appellee.

Before BOYD, C.J., and QUINN and
REAVIS, JJ.

QUINN, Justice.

Through one point of error, appellant,
Thomas Howard, contends that his capital
murder conviction should be reversed. This
is so because the trial court allegedly erred
in admitting inculpatory hearsay testimony
uttered by two individuals who assisted him
in committing the crime.[1] We overrule the
point and affirm the judgment.

### Background

The State indicted appellant for intention-
ally and knowingly causing the death of Lar-
ry Howell (Howell) by shooting him with a
gun. The shooting, according to the indict-
ment, occurred during the course of a rob-
bery. However, the evidence developed at
trial disclosed that appellant did not act
alone. Rather, he was one of three who,
together, planned to rob Howell's grocery
store and then shoot him. Ronald Springer
(Springer) and Joe Lee Guy (Guy) were the
other two individuals involved.

During the day of the robbery, the three
"checked-out" the store several times. When
night fell, appellant and Springer entered the
establishment while Guy awaited his compa-
triots outside. A number of shots rang out,
at which point Guy "rushed" inside the store.
Effort was then made to take the cash regis-
ter. Though it was removed from the store,
the assailants soon dropped it and fled.

Howell died, and his autopsy revealed that
he was struck by five bullets. One pierced
his skull, two pierced his sides, and two
entered his back. Another person, French
Howell, was also struck by one of the bullets;
however, she survived.

At trial, the jurors were instructed that
they could convict appellant of capital mur-
der if he acted as a principal or as a party
under § 7.02(a)(2) of the Texas Penal Code.

---

1. Below, appellant argued that both the United
 States Constitution and the Texas Rules of Crimi-
 nal Evidence rendered the hearsay inadmissible.
 On appeal, however, he mentions the constitu-
 tional strictures in passing but makes no attempt
 to develop them. See Tex.R.App.P. 74(f) (requir-
 ing an appellant to develop his point via argu-
 ment and authorities). Instead, he relies upon
 the teaching of various judicial opinions which
 concern the rules of evidence. Thus, we inter-
 pret his point as solely involving application of
 the Texas Rules of Criminal Evidence.

They returned a verdict of capital murder and appellant was sentenced to life in prison.

## Point of Error

Appellant argues that the trial court reversibly erred in admitting various hearsay statements which inculpated him. The first was uttered by Springer's mother, Josephine. The latter testified that several days after the robbery and murder, she went home and found her son crying. The two embraced, and Springer "told [her] that Thomas [Howard] shot those people." So too did he tell her that he was also involved in the robbery.

The second utterance came from Steven Peterson, M.D., who was hired to assist in the defense of Guy. The State called the doctor as a witness and asked him to disclose the contents of a conversation had with his client. Peterson reiterated the following:

Joe Lee Guy told me that about a week before that day that he, Tom Howard and Ron Springer decided to rob that store because there were Excel checks there being cashed.

In that initial discussion, ... Howard and ... Guy argued about who would do the shooting and ... Howard was the one who won out in that argument and that he would be the one who would do the shooting.

The next thing ... Guy told me was that on the date of the shooting, all three men went into the Howell Grocery Store at about noon. Two of them had guns. One of them—the men who had a[sic] gun was ... Howard and the other was ... Guy. Mr. Springer did not have a gun.

And they entered the store and because ... Guy and Frenchie Howell had had disagreements before, she asked him to leave. He would not leave until ... Howard told him to leave. And at that point, ... Guy left and then the other two men left....

Between noon and when they returned to the ... Store, ... Guy was very apprehensive and walked the streets and asked for a sign that he shouldn't go back. And he smoked some marijuana, one or two marijuana cigarettes, but he didn't receive that sign.

Also, all three men drove by the store slowly two or three times to check it out. And when they all three returned in the late afternoon or early evening, now only ... Howard had a gun.

... Guy said that he passed [sic] out in front of the house or in front of the store and then heard shots and rushed in. And when he rushed in, he saw that ... Howard had a gun in his hand and he would not swear that ... Howard was the one who did the shooting, but he observed the gun in ... Howard's hand.

... Guy and ... Springer grabbed the cash register, which was very heavy, and they all went out of the store, but dropped the cash register in the street because it was heavy and left it there.

The question at trial involved whether the two statements fell within an exception to the hearsay rule. The State argued that they did and invoked the exception embodied within 803(24) of the Texas Rules of Criminal Evidence. The court agreed.

## Standard of Review

Whether to admit hearsay under some exception to the hearsay rule is a matter that lies within the trial court's discretion. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App. 1994). Moreover, we will not interfere with the exercise of that discretion unless we find it to have been abused. *Id.* And, that occurs when the trial court so deviates from applicable guidelines and principles that the decision falls outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1990).

 Next, since the controversy at bar entails Texas Rule of Criminal Evidence 803(24), we turn to that rule to determine the applicable guidelines and principles. Rule 803(24) permits the admission of a hearsay statement if it

... at the time of its making [was] so far contrary to the declarant's ... interest, or so far tended to subject him to ... criminal liability, ... or to make him an object of hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability is not

admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

In other words, the statement must 1) expose the declarant to criminal liability and 2) find corroboration through other evidence. *Cofield v. State*, 891 S.W.2d 952, 955–56 (Tex. Crim.App.1994). One satisfies the first prong by showing that the utterance was truly self-inculpatory and not made for the purpose of shifting blame or currying favor. *Id.; Drone v. State*, 906 S.W.2d 608, 612 (Tex.App.—Austin 1995, pet. ref'd).

■ The second prong is satisfied if the corroborating circumstances *"clearly* indicate trustworthiness." (emphasis in original). *Davis v. State*, 872 S.W.2d 743, 749 (Tex. Crim.App.1994). There is no definitive test for determining when this standard is met. *Cofield v. State*, 891 S.W.2d at 955; *Davis v. State*, 872 S.W.2d at 747. Nevertheless, the trial court must consider both circumstances which support as well as those which undermine the reliability of the declarant. *Davis v. State*, 872 S.W.2d at 749. Furthermore, such indicia as 1) whether the guilt of the declarant is inconsistent with the guilt of the accused, 2) whether the declarant was so situated that he might have committed the crime, 3) the timing of the declaration and its spontaneity, 4) the relationship between the declarant and the party to whom the declaration was made, and 5) the existence of independent corroborating facts are quite influential. *Cofield v. State*, 891 S.W.2d at 955; *Davis v. State*, 872 S.W.2d at 749.[2] Also probative is evidence suggesting that the statement was against the declarant's interest to an unusual or devastating degree, that the declarant repeated the story to others without contradiction, and that he had no motive to falsify. *Drone v. State*, 906 S.W.2d at 612–13.

■ Finally, upon meeting both prongs, one may utilize the hearsay in several ways.

For instance, it may be used in a defensive manner to illustrate that the declarant rather than the party on trial is actually guilty of the crime in question. *E.g., Davis v. State, supra.* Or, the State may proffer it offensively as evidence not only inculpating the declarant but also establishing the guilt of the party on trial. *E.g., Cofield v. State, supra; State v. Howard,* 908 S.W.2d 602, 605 n. 3 (Tex.App.—Amarillo 1995, no pet.). But, again, it must be stressed that much depends upon the presence of factors illustrating the hearsay to be true as opposed to a fabrication. *Cofield v. State,* 891 S.W.2d at 956.

### Application of Standard to Dispute at Bar

#### a. Josephine Springer Hearsay

■ As previously disclosed, Springer's mother testified that he said Howard shot Howell. Springer also told her that he was involved in the robbery as well. Given that those who intentionally promote or assist a murder or conspire with others to commit one felony which results in the commission of another felony are as culpable as the individual who actually committed the murder or felony, TEX. PENAL CODE ANN. § 7.02(a)(2) & (b) (Vernon 1994), it could be said that the hearsay was self-inculpatory. In other words, by telling his mother that he participated in the robbery, Springer exposed himself to liability for capital murder. Furthermore, the statement was made to his mother at a time when his parents were trying to uncover the truth and urging him to turn himself in to the police if he was involved. From this circumstance, the trial court could have found that Springer was not attempting to shift the blame or curry favor with anyone. Instead, his comments could be interpreted as a decision to eschew additional fabrication and confess the truth. *See Drone v. State,* 906 S.W.2d at 612 (stating that words spoken to an acquaintance, as opposed to a police

---

2. In comparing the circumstances which underly both prongs, one may discover that they overlap. For instance, the relationship between the declarant and the one to whom the statement is made may belie the statements trustworthiness and its self-inculpatory nature. That is, uttering the statement to a law enforcement officer may suggest that it was made for the purpose of shifting blame to another, *Drone v. State,* 906 S.W.2d 608, 612 (Tex.App.—Austin 1995, pet.

ref'd), and, thus, somewhat unreliable. On the other hand, telling one's mother or other familial relation may be indicative of true self-inculpation, *id.,* and, thus, reliability. Indeed, when the hearsay is used by the State to inculpate someone other than the speaker (such as here), one court has gone so far as to say that the "corroboration issue is closely related to the question whether the declarant's statement was truly self-inculpatory." *Id.* at 613.

officer, may have no trouble qualifying for admission under the "against-penal-interest exception"). By confessing to his mother, Springer was not avoiding or lessening his culpability but implicating himself in a capital murder which could have resulted in a death sentence. In short, his comment was devastatingly against his interests.

Furthermore, others testified in a manner corroborating Springer's utterance. For instance, one witness stated that appellant had candidly discussed the details of the robbery a week before it occurred. She remembered him telling her that he and his compatriots " 'already had a gun,' " that " '[i]t's countdown time and they [the Howells] don't even know that they [sic] fixin to die,' " that he " 'was going to shoot Larry [Howell] and then kill him,' " that he was going to shoot Howell *in the head*, and that on the morning of the robbery/murder he exclaimed " '[t]oday is the day.' "

Another witness testified that she saw Howard, Guy, and Springer buy ski masks several days before the robbery. Another spoke about his conversation with Howard wherein the former asked why Howard was taken to jail. Howard replied that " 'they picked us up for ... a murder charge.' " When also asked about his involvement in the murder, appellant replied " '[y]eah, we did it.' " So too did Howard tell the witness that he (Howard), Guy, and Springer were the only three involved.

In sum, the trial court was presented with a hearsay statement inculpating the declarant for capital murder. So too did it have before it evidence corroborating the declaration. That corroborating evidence not only confirmed the place and day of robbery but also the manner in which Howell would be, and was, killed. Given this, we do not find the court's implicit decision that the hearsay was trustworthy and, therefore, admissible under Rule 803(24), outside the zone of reasonable disagreement.

#### b. *Peterson Hearsay*

■ Like Springer's, Guy's statement to Dr. Peterson was also inculpatory. It illus-

trated that he too intentionally promoted and assisted in the capital murder and was likewise subject to a death sentence. So, it could be said that his utterance had potentially devastating ramifications. Yet, because the statement was told to someone hired to help in his defense, the more cynical could argue that Guy was motivated to paint the most favorable picture he could.[3] Nevertheless, that the statement was undoubtedly made in confidentiality, given the professional relationship between the two, it could equally be posited that Guy was motivated to speak the truth.[4]

Furthermore, the very evidence that corroborated Springer's utterance also corroborated Guy's. Both Guy's statement and the aforementioned corroborative facts revealed a plan to rob the store while utilizing gun fire. Both also confirmed that only Guy, appellant, and Springer were the only one's involved. And, though Guy stopped short of saying that appellant was the individual who actually fired the weapon, it nonetheless revealed that appellant held the handgun immediately after the shots were heard. That, in turn, correlates with the other testimony describing how appellant gloated that he was to be the shooter. Moreover, another witness testified to seeing Guy *outside* the store front at approximately the same time the robbery was occurring. That lends further credence to Guy's testimony since he too said he was outside.

In sum, the trial court had basis to determine that Guy's hearsay was self-inculpatory and trustworthy. At the very least, the matter fell within the zone of reasonable disagreement.

#### c. *A Third Hearsay Statement*

■ Appellant also alludes to a third hearsay statement in his brief. That statement allegedly involved Roy Parr (Springer's father) testifying that "Ronald admitted that he knew something about the robbery and that he told him [Parr] the part of the story he wanted to know." Yet, upon reading the actual testimony, we discover that though Parr may have related some hearsay at trial,

---

3. Indeed, experience teaches that clients sometimes tell their attorneys less than the truth or the entire truth.

4. Guy was tried and convicted of capital murder before Howard's trial convened.

nothing he mentioned implicated either his son or appellant in the robbery or as the shooter. Nor did it involve the details of the crime. Rather than hear what his son had to say, Parr simply directed him to " 'go down to the sheriff's office' " if he " 'knew something about it.' "

Given 1) the fact that the tenor of appellant's argument involves only hearsay constituting declarations against interest and "naming him as the triggerman," 2) the fact that nothing Parr testified to inculpated appellant much less named him as the "triggerman," 3) the fact that appellant nowhere described how he was harmed by Parr's innocuous hearsay testimony, 4) the fact that the jurors could have convicted appellant by simply finding that we was a party to the robbery/murder as opposed to the shooter, and 5) the fact that the jurors heard a plethora of other testimony illustrating that appellant was the shooter, we find the admission of Parr's statements harmless beyond reasonable doubt. In so finding it harmless, we also assume *arguendo* that its admission was error.

Accordingly, the judgment is affirmed.