Louis Ray WHITE, Sr., Appellant,

v.

The STATE of Texas, Appellee.

No. 06–98–00022–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 6, 1998.

Decided Dec. 15, 1998.

R. Wesley Tidwell, Moore, Payne, Clem, Rodgers, Paris, for appellant.

Kerye Ashmore, Lamar County Attorneys Office, Paris, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Louis Ray White, Sr. was convicted of aggravated robbery, with two prior convictions. The jury set his punishment at life in prison. On appeal, White contends that the trial court improperly overruled his *Batson* objection and his motion for a continuance, improperly admitted an out-of-court statement of an accomplice, and erred in overruling his motion for new trial because the accomplice testimony was not corroborated sufficiently to support his conviction. We affirm the judgment.

The State's evidence showed that on March 30, 1997, Louis Ray White, Sr. and Louis Ray White, Jr. (Junior) robbed the Family Mart in Paris, Texas. White drove himself and his son to the store. When they arrived, Junior got out of the car and entered the store carrying a shotgun wrapped in a tee shirt. He pointed the shotgun at the clerk and demanded money. On May 22, 1997, White and Junior were arrested and indicted. On October 22 of the same year, White was tried separately and convicted. Junior has not yet been tried.

During voir dire, the State exercised one of its peremptory strikes on venire member Linda Battle. White contended that the State struck Battle because she is black. White based his challenge on the fact that the State struck Battle without asking her any question. The trial court took judicial notice that Battle was black and admitted her jury questionnaire into evidence. The prosecutor responded with two race-neutral explanations. First, he pointed out that the jury panel already had four black members. Additionally, he stated that he struck Battle because she stated on her jury questionnaire that the Lamar County Attorney prosecuted her son, and he was convicted. The prosecu-

tor was not under oath when he gave the race-neutral explanations. The trial court overruled White's *Batson* objection.

During his opening statement, White's counsel told the jury that he would call Trent Joplin to testify in his case in chief. Joplin, however, failed to appear at the first day of trial, although he had been subpoenaed. On the second day of trial, the court issued a writ of attachment for Joplin, but he was not located. After the State rested, White's counsel gave his opening statements. He argued that Trent Joplin had information concerning a person who was hiding from the police on the night of the robbery. When White called Joplin to testify, the bailiff stated that the witness was not present.

Outside the presence of the jury, White asked the trial court to take judicial notice of Joplin's subpoena and orally requested a continuance until Joplin could be found. White asked for a continuance because of "the nature of Mr. Joplin's statement which was given to Officer Monree." White then offered an unsworn statement that Joplin had given to the police. The State did not object to the statement. White also requested a mistrial in the event that his continuance was not granted. The trial court then overruled White's request for a continuance and motion for mistrial.

During the trial, the State requested permission to allow Rayla McCurry, White's daughter and Junior's sister, to testify about statements Junior had made to her. White objected to the admission of such statements on the basis that testimony by McCurry would violate his right of confrontation. The court overruled White's objection and granted him a running objection. McCurry testified that Junior admitted to her in an out-of-court statement that he and White committed the robbery.

■ We first address the claimed *Batson* violation. White asserts that the State failed to provide a race-neutral explanation for striking venire person Linda Battle. Specifically, White argues when the State gave its race-neutral explanations, the State's attorney was not under oath and thus the statements did not constitute evidence.

■ The Equal Protection Clause of the United States Constitution forbids the State from excluding venire persons from jury service solely because of their race. U.S. CONST. amend. XIV; *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In reviewing a *Batson* claim, an appellate court must determine if the State exercised its peremptory strikes in a purposefully discriminatory manner. *Keeton v. State*, 749 S.W.2d 861, 870 (Tex.Crim.App. 1988). We may not reverse the trial court's *Batson* decision unless we are left with a firm conviction that a mistake has been committed. *Harris v. State*, 827 S.W.2d 949, 955 (Tex.Crim.App.1992). If the record supports the findings of the trial court, they will not be disturbed on appeal. *Keeton*, 749 S.W.2d at 870.

■ A *Batson* review involves a three-step analysis. *Roberts v. State*, 963 S.W.2d 894, 899 (Tex.App.-Texarkana 1998, no pet.) (citing *Purkett v. Elem*, 514 U.S. 765, 767–69, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). The first step requires the complaining party to make a prima facie case of racial discrimination. *Roberts v. State*, 963 S.W.2d at 899. After the complaining party makes his prima facie case, the second step requires that the proponent of the challenge come forward with a race-neutral reason for the strike. *Id.* If the proponent of the strike can produce a race-neutral reason, then in the third and final step, the opponent of the strike has the ultimate burden of proving intentional discrimination. *Id.*

■ The question before this Court is whether the prosecutor gave a race-neutral explanation with his unsworn statements to the trial court. Typically, unsworn statements by attorneys are not evidence. *Lott v. City of Fort Worth*, 840 S.W.2d 146, 150–51 (Tex.App.-Fort Worth 1992, no writ). However, as we noted in *Parra v. State*, during a *Batson* hearing, if nonevidence is introduced and considered by the court without objection, it then becomes evidence. *Parra v. State*, 935 S.W.2d 862, 868 n. 1 (Tex.App.-Texarkana 1996, no pet.) *(citing Lott v. City of Fort Worth*, 840 S.W.2d at 150). Additionally, the Texas Supreme Court has held that

unsworn statements of counsel may be offered to explain why peremptory challenges were exercised. *Goode v. Shoukfeh*, 943 S.W.2d 441, 451 (Tex.1997). White does not contest the State's reason for the strike; he only complains of the unsworn nature of the statements. White did not object when the State offered its reasons for the strike.

■ White also contends that the trial court erred by overruling his motion for continuance. We conclude that White did not preserve error on this point. To preserve error when the trial court refused to grant a motion for a continuance due to an absent witness, White must have presented, in his motion for new trial, an affidavit by Joplin, or some other source, containing sworn evidence showing what Joplin would have testified to at trial. *Varela v. State*, 561 S.W.2d 186, 191 (Tex.Crim.App.1978); *Ashcraft v. State*, 900 S.W.2d 817, 834 (Tex.App.-Corpus Christi 1995, pet. ref'd, pet. dism'd); *Kemper v. State*, 643 S.W.2d 758 (Tex.App.-San Antonio 1982, no pet.). White's motion for new trial is sworn to, but it does not contain any evidence as to what Joplin might have said if he were called as a witness.

At the hearing on the motion for continuance, White introduced Joplin's unsworn statement to the police. White did not explicitly tell the court that Joplin's testimony would be the same as his statement to the police, but we find that offering the statement sufficiently apprised the court about the nature of Joplin's expected testimony.

However, the statement was not sworn to, so it was insufficient to support a motion for continuance because of the absence of the witness. TEX.CODE CRIM. PROC. ANN. art. 29.08 (Vernon 1989); *Ashcraft v. State*, 900 S.W.2d 817.

■ Additionally, Joplin's statement [1] was not material as to White's guilt, so even if the trial court erred in overruling the motion for continuance, the error was harmless. Further, White's motion for continuance was not in writing and was not sworn to.

■ A motion for continuance made during trial, that is not in writing and is not sworn to, will not preserve error if it is denied. *Matamoros v. State*, 901 S.W.2d 470, 478 (Tex.Crim.App.1995); *Montoya v. State*, 810 S.W.2d 160, 176 (Tex.Crim.App. 1989); *Garcia v. State*, 960 S.W.2d 329, 333 (Tex.App.-Corpus Christi 1997, no pet.); *Mosley v. State*, 960 S.W.2d 200, 206 (Tex. App.-Corpus Christi 1997, no pet.); *Vega v. State*, 898 S.W.2d 359 (Tex.App.-San Antonio 1995, pet. ref'd). Article 29.03 of the Code of Criminal Procedure provides that a criminal action may be continued on the *written* motion of either party. TEX.CODE CRIM. PROC. ANN. art. 29.03 (Vernon 1989). Article 29.08 requires that all motions for continuance must be sworn to by a person with knowledge of facts relied on for the continuance. TEX.CODE CRIM. PROC. ANN. art. 29.08.

The Beaumont Court of Appeals recently decided a case concerning an oral motion for

1. Joplin's statement to police was as follows:

On Sunday night, sometime around 10:30 p.m. I had went to Brad Taylor's house. He lives on Primrose St. In Morningside. I had drove down Lamar Ave. To 42nd St. But the road was blocked off by a Police car. I drove back around and came in from the loop to Brads house. When I got there the police were already there walking around with the dog. We stayed outside for a little bit and then the cops showed up and started asking us questions. After the police left we went inside the house. We were inside the house talking about what had happened at the store and the doorbell rang. It was some guy named Rick that Brad knew. He said that someone had dropped him off on 42nd St. and that he needed a ride. I was fixing to leave and Brad said that Rick was cool so I gave him a ride. The road was still blocked off at Lamar so I went back out the same way I had come in. I went down to

Lamar Ave. And drove up Lamar to 20th and turned on 20th by Thomas food store. Rick told me to stop in front of Philip Kirkpatricks house. He lives there on 20th. I stopped and Rick got out and started walking up to Philips house and I left. I haven't seen him since then. I had met Rick through Brad a while back but never knew his last name. While I was giving Rick a ride I had asked him how old he was and he said that he was 28. Rick is about 5'11" tall, about 160 lbs., wearing a white baseball cap, black jeans, cowboy boots, and a dark brown and black mixed western style shirt. He had black short cut hair and clean shaven. To me he sort of looked like white trash or at least he didn't have any money and looked like he was run down.

When I was over at Brads house and when I left his house I did not see any one around there or see the station wagon that they were talking about that they said that they had seen.

continuance. In *Deaton v. State,* the court held that the trial court abused its discretion by not granting appellant's oral motion for continuance. *Deaton v. State,* 948 S.W.2d 371, 374 (Tex.App.-Beaumont 1997, no pet.). The court stated that the "idea of an 'equitable approach' or seeking an 'equitable' rather than a 'statutory' continuance has never been expressly rejected by the Court of Criminal Appeals." *Id.* at 374. These equitable motions are actually motions for delay or for a recess, rather than traditional motions for continuance. Professor Dix and Professor Dawson state:

> Independent of Chapter 29 of the Code of Criminal Procedure, a body of case law has developed to the effect that trial judges have discretion to grant 'recesses' during trial. These situations generally involve oral motions for delay. Therefore, they are beyond the scope of Chapter 29 of the Code of Criminal Procedure and invoke the 'equitable powers' of the court.

42 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 28.76 (Texas Practice 1995). Equitable motions for continuance typically allow a party a short delay to secure a witness. *Id.* Situations where courts grant equitable motions for delay include when a witness who is present at the beginning of trial leaves temporarily just before he is called to the stand. *Deaton v. State,* 948 S.W.2d at 377. Another circumstance where a court has upheld an equitable motion is when the State rested earlier than expected and the defendant requested, in the late afternoon, to continue the trial until the next day. *Petrick v. State,* 832 S.W.2d 767 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd).

■■■ Abuse of discretion is the standard for reviewing the trial court's action on an equitable motion for continuance. *Deaton v. State,* 948 S.W.2d at 375. The factors to consider when presented with such a motion are: the diligence in interviewing and procuring the witness' presence; the probability of procuring the testimony within a reasonable time; the specificity of the witness' expected testimony; the degree the testimony is expected to be favorable to the accused; and the unique or cumulative nature of the

witness' testimony in relation to the requirements of TEX.CODE CRIM. PROC. ANN. art. 29.13 (Vernon 1989). *Deaton v. State,* 948 S.W.2d at 374; *Petrick v. State,* 832 S.W.2d at 770–71.

■■■ Even if White's motion invoked the equitable powers of the court, the court still did not abuse its discretion in denying the motion. White did not meet the requirements set out in the *Deaton* and *Petrick* decisions. He offered no reliable indication of the expected testimony of Joplin. The trial court did not know if Joplin could be procured within a reasonable time. White waited until the second day of trial to seek an attachment for Joplin, even though he knew on the first day of trial that he did not appear in obedience of his subpoena. Moreover, the court did allow White a delay, but he was still unable to procure the witness.

■■■ Finally, White contends that the trial court erred by allowing McCurry to testify about Junior's out-of-court admissions of guilt, because Junior's statements were hearsay and their admission violated White's right to confront the witnesses against him.

■■■ The United States Supreme Court has held that, generally, a co-defendant's out-of-court self-inculpatory statement that also implicates the defendant is presumptively unreliable because of the co-defendant's desire to shift blame, curry favor, or divert attention to another. *Lee v. Illinois,* 476 U.S. 530, 545, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). While acknowledging that such a statement is typically inadmissible, the Supreme Court has also stated there are circumstances in which such a statement is sufficiently trustworthy to be admissible against the defendant. *Williamson v. United States,* 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). Likewise, the Texas Court of Criminal Appeals has expressly rejected the proposition that out-of-court statements of a co-defendant are always inadmissible against the defendant. *Cofield v. State,* 891 S.W.2d 952, 956 (Tex.Crim.App.1994). When the circumstances indicate the trustworthiness of the statement, a trial court may properly allow the evidence. *Id.* at 956; *Cantu v. State,* 939 S.W.2d 627, 635 (Tex.Crim.App.1997).

Junior's statement related by McCurry was not inadmissible. TEX.R. EVID. 803(24), known as the statement against interest rule, provides that a statement is not excluded by the hearsay rule if, at the time it was made, the statement so tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. TEX.R. EVID. 803(24); *Jefferson v. State*, 909 S.W.2d 247 (Tex.App.-Texarkana 1995, pet. ref'd). In criminal cases, a statement tending to expose the declarant to criminal liability is admissible only if corroborating circumstances clearly indicate the trustworthiness of the statement. *Cunningham v. State*, 877 S.W.2d 310, 313 (Tex.Crim.App.1994). The standard for appellate review of a trial court's decision to allow statements under Rule 803(24) is whether the trial court abused its discretion. *Id.* at 313.

Factors the court may consider in applying Rule 803(24) include whether the guilt of the declarant is inconsistent with the guilt of the accused; whether the declarant was so situated that he might have committed the crime; the timing of the declaration and its spontaneity; the party to whom the declaration was made; and the existence of independent corroborating facts. *Jefferson v. State*, 909 S.W.2d at 251. The trial court may consider evidence that undermines the reliability of the statement, as well as evidence corroborating its trustworthiness. *Id.* The burden is on the party seeking admission of the statement to establish corroborating circumstances clearly indicating trustworthiness. *Id.; Davis v. State*, 872 S.W.2d 743, 749 (Tex.Crim.App.1994).

The circumstances surrounding the making of Junior's statement indicate its trustworthiness. Junior did not confess to the police. He was not attempting to shift blame or curry favor by making the statement. Courts typically hold that a statement is sufficiently trustworthy for purposes of Rule 803(24) when the statement is made to a relative. *Cantu v. State*, 939 S.W.2d at 627; *Howard v. State*, 945 S.W.2d 303, 306–07 (Tex.App.-Amarillo 1997, no pet.); *see Drone v. State*, 906 S.W.2d 608, 612 (Tex.App.-Austin 1995, pet. ref'd). Although Junior first denied any part in the crime, he ultimately freely and voluntarily admitted the crime to his sister. Clearly, the circumstances surrounding the making of the statement indicate its trustworthiness.

The statement is also adequately corroborated. Junior told McCurry how he broke into her house to get the shotgun and a tee shirt used in the crime. McCurry testified that when she heard about the crime, she looked for her gun and found it missing. Junior told McCurry how White drove him to the store and that when he got out of the car, he went into the store and robbed the clerk. Junior told McCurry he and his father then went to a house, where they counted the money. Amber Bowling testified that she saw Junior and White counting money on the night of the robbery.

Junior's out-of-court self-inculpatory statements implicating White in the crime were properly admissible under Rule 803(24). The circumstances surrounding the making of the statement indicate its reliability, as does the corroborating evidence presented at trial.

White's fourth point of error complains of the factual sufficiency the evidence. The crux of White's argument is that his conviction was based on the testimony of an accomplice without sufficient corroborating evidence. White asserts that apart from Junior's confession to McCurry, there was no evidence linking him to the getaway car, no fingerprints were obtained, and no visual identification was made. The State argues sufficient corroborating evidence existed to support the conviction, apart from Junior's admissions.

A conviction cannot rest on the testimony of an accomplice without corroborating evidence that connects the defendant with the crime. TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). The general policy behind the accomplice witness rule is that the accomplice is a discredited witness, and his testimony is to be carefully scrutinized because he may have an interest in the outcome of the trial and may be a corrupt source. *Beathard v. State*, 767 S.W.2d 423, 429 (Tex.Crim.App.1989).

Article 38.14 does not apply here, however. Out-of-court statements by an accomplice are not "testimony" within the meaning of Article 38.14, and thus do not require corroborating evidence. *Bingham v. State,* 913 S.W.2d 208, 210 (Tex.Crim.App.1995); *Hammond v. State,* 942 S.W.2d 703, 707 (Tex App.-Houston [14th Dist.] 1997, no pet.). McCurry's testimony that Junior had admitted to the crime is not considered accomplice testimony for purposes of Article 38.14. Accordingly, White's conviction may rest entirely on Junior's out-of-court statement.

 Even if Junior's out-of-court statement must be corroborated, however, there is ample nonaccomplice evidence to support the conviction. The standard for weighing the sufficiency of corroborative evidence is to eliminate from consideration the testimony of the accomplice witness and then examine the testimony of other witnesses to ascertain if there is evidence that tends to connect the accused with the commission of the offense. *Hernandez v. State,* 939 S.W.2d 173, 176 (Tex.Crim.App.1997). The nonaccomplice evidence need not be sufficient in itself to establish the accused's guilt beyond a reasonable doubt. *Id.* at 176. Nor is it necessary for the nonaccomplice evidence to directly link the accused to the commission of the offense. *Id.* The accomplice witness rule is satisfied if there is some nonaccomplice evidence that tends to connect the accused to the commission of the offense alleged in the indictment. *Id.*

The nonaccomplice evidence adduced at trial showed that a car matching the description of White's car was seen in the area where the crime was committed. Nonaccomplice witnesses testified they had seen White's car casing the scene of the crime shortly before the store was robbed. These witnesses stated that an older white male drove the car, with a younger white male in the passenger's seat. One witness saw White and Junior counting stacks of money the night of the robbery. When McCurry learned of the crime, she checked her house for her shotgun and found that it was missing. White and Junior asked people where they could get a gun shortly before the robbery. The most significant corroborating evidence adduced at trial is the personal admission by White to his daughter McCurry that he and Junior committed the crime. White told McCurry he "wanted to find out what his son was made of." White stated to McCurry that when they decided to rob the Family Mart, they went to her house to get her shotgun. He also admitted that he drove the car and waited while Junior went into the store. We find this to be ample corroboration.

For the reasons stated, the judgment is affirmed.

GRANT, Justice, concurring.

Bizarre is a word that comes to mind when Texas law dictates that a statement by an accomplice under oath and subject to cross-examination must be corroborated, but an out-of-court statement by that same accomplice, unsworn and not subject to cross-examination, is sufficient evidence for conviction without corroboration. I recognize the holdings of the cited precedents on this issue, but to me this does not mesh with the long-established concepts of evidence and requirement for corroboration of the testimony of accomplice witnesses. The evidence being admitted is clearly a statement by an accomplice witness. The substance of the statement is not that of the party having heard the statement, but of the accomplice himself. The fact that the statement was not made in the courtroom does not add so much to its credibility that the need for corroboration is destroyed. I do not argue that this evidence cannot be admitted, but when admitted, it is in effect an out-of-court testimony of an accomplice. Surely, the Legislature did not mean to alter that basic principle by the use of that language.

Because there is other nonaccomplice evidence to support the conviction, I concur with the majority opinion.