

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00060-CR

_____

JESSE DWAYNE BLACK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court
Lamar County, Texas
Trial Court No. 62549

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

After Jesse Dwayne Black was convicted by a Lamar County jury for driving while intoxicated (DWI)[1] and sentenced to 270 days' imprisonment, he has appealed. Black's two points of error on appeal are that he claims (1) there was insufficient evidence to prove he was operating a vehicle and (2) the trial court erred when it denied him a continuance. We overrule both points and affirm the trial court's judgment and sentence.

## I.      Challenge to Sufficiency of the Evidence

Quite understandably, Black makes no challenge to the sufficiency of the proof that he was intoxicated at the time of the incident that gave rise to the State's charge of DWI.[2] Instead, Black argues that because no witness testified to having seen him driving his truck, there was insufficient evidence to prove that he operated a motor vehicle while intoxicated.

### A.      Measure of Sufficiency

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (*citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review

---

[1]*See* TEX. PENAL CODE ANN. § 49.04(d) (West Supp. 2014).

[2]When police discovered Black, he was alone in the cab of his Toyota Tundra pickup truck, which had crashed into a tree. Black was taken to a hospital, where he was described as exhibiting signs of intoxication, including acting belligerent, vulgar, and rude. He argued with hospital staff, and tests showed his blood-alcohol concentration to have been .264. If a person is shown to have a blood-alcohol concentration of at least .08, he satisfies one of the definitions of "intoxicated." TEX. PENAL CODE ANN. § 49.01(2)(B) (West 2011).

focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

## B.     Evidence Heard

Black testified that after a day of drinking beer and eating barbeque with friends, he asked a friend, Gregory Winkler, to drive him home in Black's truck because Black admitted that he was quite intoxicated at that time. However, Black stated that Winkler crashed the truck into a tree. Under Black's narrative, his head struck the passenger-side sun visor, breaking the visor and injuring his head, causing him to bleed from the wound onto the passenger's side floorboard area. Black stated that although he was fading into and out of consciousness, he remembered Winkler telling him that he (Winkler) was going for help.

The first person to arrive on the scene, according to Black, was his cousin, Mark Black, who testified that on his arrival, Black was sitting on the passenger's side of the truck's cab. Black's girlfriend, Renaee Ellis, testified that two women had come to her door, informed her of the wreck, and presented her with the keys to Black's truck. Ellis stated that she gave the keys to the police at the scene, but neither of the police officers mentioned this delivery. Ellis stated that on her arrival, Black was seated on the driver's side of the pick-up.

The State presented testimony from two Paris police officers who responded to the call of a motor vehicle accident. Officer Johnny Bangs testified that he arrived first and found Black slumped over in the truck's cab, sitting in the passenger's seat. However, only moments later, Bangs corrected himself and said that Black was sitting in the driver's seat when he arrived. Bangs said that Black was unable to answer Bangs' questions at that time and that emergency medical personnel removed Black from the driver's door, something that the audio/video recording from Bangs' dashboard camera in his patrol car confirmed. Officer Cody Flatt said he arrived immediately after Bangs and found Black seated in the driver's seat, but slumped over the center console with his head facing the passenger area. Flatt also testified that emergency personnel removed Black from the driver's side. Flatt also stated that he saw blood on the floorboard of the passenger side of the cab. The dashboard camera recording also documents that someone (apparently Bangs) reported by radio to dispatch and described Black as having no apparent external injuries.

4

Black directs us to two cases, *Hudson v. State*[3] and *Reddie v. State*[4] as his precedent. In each of these cases, the evidence was found to be insufficient to establish that the appellants were operating the respective vehicles. (We note that case analysis has changed somewhat through the years, and we find that a more contemporary case more accurately directs our analysis today.) In *Murray v. State*, 457 S.W.3d 446 (Tex. Crim. App. 2015), Murray was charged with DWI after he was found asleep in his pickup truck. Murray was located by the police in the driver's seat of the cab; the truck's engine was running, the radio was turned up loud, and the truck was pulled partially into the driveway of a fireworks stand and partly on the roadside's improved shoulder. Although there were no signs of alcoholic beverages in the vicinity, Murray "appeared very intoxicated." *Id.* at 448. Considering the aggregate evidence in the light most favorable to the verdict, the Texas Court of Criminal Appeals found the evidence to be sufficient to support the jury's DWI verdict. The court pointed to Murray's state of intoxication when discovered by the arresting officer, coupled with Murray's admission he had been drinking, although there were no alcoholic beverages in the area. The court concluded that "a factfinder could have reasonably inferred that Appellant consumed alcoholic beverages to the point of intoxication somewhere other than where

---

[3]*Hudson v. State*, 510 S.W.2d 583, 584 (Tex. Crim. App. 1974). In this case, Hudson was discovered seated in his 1966 blue Oldsmobile, which had a flat tire and warped wheel; Hudson's feet were on the ground. The court pointed out the absence of any "testimony whatsoever" as to how long the car had been at the location, that it was the same blue Oldsmobile Hudson and his wife had purchased, as to how the car came to be at the location, or as to who drove it.

[4]*Reddie v. State*, 736 S.W.2d 923 (Tex. App.—San Antonio 1987, pet. ref'd). In this case, Reddie was seen "slumped over the steering wheel of a car" by a passersby; the vehicle was idling while "parked in the middle of a road leading into a new residential subdivision . . . ." *Id.* at 924. In finding the evidence insufficient to prove Reddie had operated the vehicle while intoxicated, the appellate court pointed out the absence of evidence showing when Reddie had arrived at the location, whether another person had been in the car, or how long the car and Reddie had been at the location. "Moreover, there [was] no proof to show that appellant was intoxicated when he arrived on the scene or when he may have become intoxicated." *Id.* at 925.

he was found." *Id.* at 449. Further, because Murray was the only person in the area, "a factfinder could have also reasonably inferred that Appellant drove his vehicle to the location at which he was found after drinking to intoxication." *Id.*

Additionally, the Court of Criminal Appeals has said that a totality of the circumstances approach should be used in determining whether the State has proven that a DWI defendant operated a motor vehicle. "To find operation[,] . . . the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995).

Here, (in contrast to the *Murray* case) the engine of Black's vehicle was not running when police arrived. Although when Bangs arrived, there were several people in the vicinity of the truck, none of them appeared to have been involved in the wreck itself. The vehicle belonged to Black, and he was found alone in the vehicle, there having been no indication at that time that anyone had been in the vehicle with Black. (Black did not present his theory of Winkler having been the driver until a few days before trial). The jury was responsible for weighing the credibility of the witnesses and resolving conflicts in testimony. *See Hooper*, 214 S.W.3d at 13.[5] Black admitted to drinking all day to the point of intoxication so that part of the conviction equation was not in doubt. The testimony of Mark Black that Black was located in the passenger seat of the truck's cab when he arrived was nothing more than circumstantial evidence for the jury to weigh, as was Black's testimony that Winkler had been the driver. *See White v. State*, 412 S.W.3d 125,

---

[5]It is the jury's responsibility "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."

6

129 (Tex. App.—Eastland 2013, no pet.) ("[T]he jury was free to reject Appellant's self[-]serving testimony at trial that he was not operating the vehicle, particularly in light of his admission that he could not recall what transpired at the scene."). The totality of the circumstances would have allowed the jury to reasonably infer that Black had operated his truck while intoxicated. We overrule Black's first point of error.

## II.    Complaint Concerning Denial of Continuance Not Preserved

Black argues in his second point of error that the trial court erred in denying Black's request for a continuance.[6]  Although Black requested a continuance before testimony began, he did so only orally, making no written, sworn motion as required by the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.08 (West 2006). "A motion for continuance made during trial, that is not in writing and is not sworn to, will not preserve error if it is denied." *White v. State*, 982 S.W.2d 642, 646 (Tex. App.—Texarkana 1998, pet. ref'd) (citing *Matamoros v. State*, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995)); *see also Anderson v. State*, 301 S.W.3d 276, 280–81 (Tex. Crim. App. 2009) ("[B]y making an unsworn pretrial oral motion for a continuance, Anderson failed to preserve his claim that the trial judge erred . . . ."). This point has not been preserved for our review, and we overrule it.

---

[6]Black sought a continuance to locate Winkler, who Black said was actually driving, *see supra* Part I.B; although a subpoena had been issued and Black's investigator testified to his attempts to locate Winkler, Black did not try to find Winkler until just a few days before trial. Black told the court he had not known of Winkler or his potential importance until that time. Granting or denying a motion for continuance is left to the trial court's discretion. *See Smith v. State*, 721 S.W.2d 844, 850 (Tex. Crim. App. 1986). Black never explained why he did not try to locate Winkler sooner or even make the potential witness' existence known to counsel in the several months that passed between the State's information and trial. Trial occurred about eight months after the incident giving rise to the State's allegation. The State's information was filed about six months before trial.

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     October 19, 2015
Date Decided:      November 4, 2015

Do Not Publish

8