Michael Eugene DRONE, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–94–00131–CR.

Court of Appeals of Texas,
Austin.

Aug. 23, 1995.

Discretionary Review Refused Dec. 6, 1995.

Mark E. Danford, McDurmitt & Danford, Belton, for appellant.

Hollis C. Lewis, Jr., County & District Attorney, James A. Endicott, Jr., Special Counsel to County & District Attorney's Office, Cameron, for appellee.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

PER CURIAM.

A jury found appellant guilty of murder and assessed punishment at imprisonment for life and a $10,000 fine. Penal Code, 63d Leg., R.S., ch. 399, sec. 1, § 19.02, 1973 Tex. Gen.Laws 883, 913, *amended by* Act of May 28, 1973, 63d Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex.Gen. Laws 1122, 1123 (Tex. Penal Code Ann. § 19.02, since amended).

Appellant lived in a Cameron rooming house owned and managed by Elsie Haas Fuller. Mrs. Fuller, who was eighty-eight years old, lived in a first-floor apartment in the building. On February 1, 1993, a Cameron police officer went to Mrs. Fuller's apartment in response to a report that she had not been seen or heard for several days. Finding the door unlocked, the officer entered the apartment and found Mrs. Fuller lying dead on the living room floor with a butcher knife protruding from her chest. The medical examiner testified that she had suffered numerous stab wounds, some of which penetrated the heart, lungs, aorta, and liver. In addition, the body bore evidence of numerous blows to the head and arms by a blunt instrument. The evidence indicates that the murder was committed on Friday night, January 29, 1993, which was the last time Mrs. Fuller was seen alive by anyone except her killer.

### 1. Scientific evidence.

A bloody footprint was found on the linoleum floor just inside the front door of the victim's apartment. A second footprint was found on a piece of carpet on the front porch after the carpet was treated with a chemical that causes blood to fluoresce. A footprint expert testified that the size and tread pattern of these footprints matched athletic shoes belonging to appellant. In addition, an expert in DNA analysis testified that blood found on these shoes belonged to the deceased.

In two points of error, appellant contends the district court erred by admitting in evidence State's exhibit 12, vials of appellant's

blood used in the DNA testing, and State's exhibit 55, a photograph of the bloody footprint on the carpet. Appellant argues that the two exhibits were not properly authenticated. The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Tex.R.Crim.Evid. 901(a).

■ Cameron police office Dennis Richter testified that he took appellant to the office of Dr. J.H. Allen to have a blood sample drawn. He identified exhibit 12 as the vials of blood given to him by Dr. Allen's nurse. The nurse, Angie Short, testified that she drew blood from a man brought to the doctor's office by Richter and identified her handwriting on the vials of blood in exhibit 12. Short stated that the man from whom she drew this blood was identified as Michael Drone, but she could not identify appellant in court. In his own testimony, appellant acknowledged giving a blood sample. We find this evidence sufficient to support a finding that exhibit 12 was what its proponent claimed it to be. That Short could not, one year later, positively identify appellant in court went to the weight of the evidence, not its admissibility. Point of error two is overruled.

■ We also find no error in the admission of exhibit 55, the photograph of the footprint. A photograph may be authenticated by the testimony of any witness who has personal knowledge that the particular item accurately represents the scene or event it purports to portray. *Kephart v. State*, 875 S.W.2d 319, 321 (Tex.Crim.App.1994). Jill Hill, a forensic serologist with the Department of Public Safety, testified that the photograph was taken at her direction and in her presence, and that the photograph accurately displayed what was shown on the carpet in her laboratory. This testimony was adequate to authenticate the exhibit. Point of error three is overruled.

**2. Hearsay testimony.**

■ Victor Gadison, another resident of the rooming house, testified that appellant once told him during a conversation that the deceased kept a money bag in her apart-

ment. In point of error five, appellant contends this testimony was erroneously admitted over his hearsay objection. But an out-of-court statement by a party offered against the party is not hearsay by definition, and is admissible as an admission by party-opponent. Tex.R.Crim.Evid. 801(e)(2)(A); *Cunningham v. State*, 846 S.W.2d 147, 151 (Tex. App.—Austin 1993), *aff'd*, 877 S.W.2d 310 (Tex.Crim.App.1994). Point of error five is overruled.

■ Appellant's sixth point of error also complains of the admission of alleged hearsay. Harold Hoffman, an inmate in the Milam County jail, testified that he heard an argument between appellant and another inmate during which appellant said, "I will kill you, too." Like the statement discussed in the previous paragraph, this was an admission by party-opponent and appellant's hearsay objection was properly overruled. Point of error six is overruled.

In a final hearsay point, appellant urges that the district court should not have admitted the testimony of Dora Montez and James Wells concerning out-of-court statements made by Shirley Ewing. Ewing, though married, was romantically involved with appellant. Ewing, Montez, and Wells were employed at a Cameron nursing home. Montez and Wells testified to statements they heard Ewing make at work during April 1993, about three months after the murder.

■ Wells testified that he overheard a conversation between Ewing and Arthur Ellison after Ellison was questioned at the nursing home by a police officer. According to Wells, this conversation went as follows: "She asked him, 'Well, why was the laws here?' Then he say, 'I think they know about Mike.' She say, 'Did you tell him the part about me washing the clothes that night?' And he said '[N]o, he didn't say nothing.'" Montez testified that she, Ewing, and several coworkers were discussing a newspaper article concerning the murder when Ewing said, "I don't know why I washed those clothes for Michael. It felt like

I killed the old woman myself." [1] This testimony was hearsay. Tex.R.Crim.Evid. 801(d); *see* 2 Steven Goode, Olin Guy Wellborn III, & M. Michael Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal* § 801.2 (Texas Practice 2d ed. 1993) (hereafter cited as "*Guide to Texas Rules*") (discussing various categories of hearsay). The district court ruled that the testimony was admissible under the hearsay exception for statements against penal interest. *See* Tex. Penal Code Ann. §§ 37.09, 38.05 (West 1994) (tampering with evidence, hindering apprehension).

A statement which at the time of its making so tended to subject the declarant to criminal liability that a reasonable person would not have made the statement unless she believed it to be true is admissible as an exception to the hearsay rule if corroborating circumstances clearly indicate the trustworthiness of the statement. Tex.R.Crim.Evid. 803(24); *Burks v. State*, 876 S.W.2d 877, 904–05 (Tex.Crim.App.1994); *Davis v. State*, 872 S.W.2d 743, 746–49 (Tex.Crim.App.1994); *Cunningham*, 846 S.W.2d at 149–50. This exception to the hearsay rule is most commonly used by a defendant seeking to exculpate himself with evidence of an out-of-court confession by a third party. But rule 803(24) recognizes the possibility that a statement against the declarant's penal interest also may implicate the accused, and may be presented by the State to inculpate the defendant. *McFarland v. State*, 845 S.W.2d 824, 835–36 (Tex.Crim.App.1992); *Lewis v. State*, 856 S.W.2d 271, 274–75 (Tex.App.—Texarkana 1993, no pet.); 2 *Guide to Texas Rules* § 803.29.

■■■ To be admissible against the accused as a statement against penal interest, a declarant's out-of-court statement inculpating the accused must be truly self-inculpatory as well. *Williamson v. United States*, —— U.S. ——, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) (interpreting Fed.Rule Evid. 804(b)(3)); *Cofield v. State*, 891 S.W.2d 952 (Tex.Crim.App.

1994) (interpreting rule 803(24)). Whether a statement is in fact against the interest of the declarant must be determined from the circumstances of each case. *Williamson*, —— U.S. at ——, 114 S.Ct. at 2436, 129 L.Ed.2d at 484; *Cofield*, 891 S.W.2d at 956. For example, a statement admitting the speaker's guilt and implicating another person in the same crime, made while in custody, may be motivated by a desire to curry favor with the police and hence fail to qualify as against the speaker's interest. On the other hand, the same words spoken to an acquaintance may have no trouble qualifying for admission under the against-penal-interest exception. *Williamson*, —— U.S. at ——, 114 S.Ct. at 2436, 129 L.Ed.2d at 484.

■■■ Ewing's out-of-court statements admitting that she washed appellant's clothes on the night of the murder were not made to the police while in custody, but to friends and coworkers at her place of employment. There is nothing in the record to suggest that Ewing was thought to be involved in the murder, even indirectly, at the time these statements were made. There is no reason to suspect that Ewing made the statements in an attempt to curry favor with the authorities, to minimize her culpability, or otherwise to serve her own self-interest. Under the circumstances presented, we believe that Ewing would not have made the statements implicating herself in Elsie Fuller's murder unless she believed them to be true. We conclude that Ewing's statements were against her penal interest even though they also tended to inculpate appellant.

To be admissible under rule 803(24), a statement against penal interest must be corroborated by circumstances clearly indicating the trustworthiness of the statement. We have written that the trustworthiness of a statement against penal interest is clearly indicated when: (1) there is evidence independent of the statement itself that tends either directly or circumstantially to estab-

---

1. Ewing testified at trial and denied making the statements attributed to her by Montez and Wells. Ellison and other coworkers also testified that they did not hear Ewing make the alleged incriminating statements. In determining the admissibility of a statement against penal inter-

est, a court must not weigh the credibility of the in-court witnesses. *Davis v. State*, 872 S.W.2d 743, 749 (Tex.Crim.App.1994). Therefore, we will take the testimony of Montez and Wells at face value in deciding this point of error.

lish the truth of the matter asserted by the statement, or (2) there is additional evidence of the veracity of the declarant beyond that inherent in the potential for criminal liability, such as proof that the statement was against the declarant's interest to an unusual or devastating degree, that the declarant repeated his story often and consistently, or that he could not have been motivated to falsify. *Cunningham,* 846 S.W.2d at 150. The Court of Criminal Appeals, while stating that there is no definitive test by which to gauge the trustworthiness of a statement against penal interest, has listed several factors that may be considered:

> Any number of factors may be considered in this inquiry, including whether the guilt of the declarant is inconsistent with the guilt of the accused, whether the declarant was so situated that he might have committed the crime, the timing of the declaration and its spontaneity, the relationship between the declarant and the party to whom the declaration was made, and the existence of independent corroborating facts. Further evidence which undermines the reliability of the statement ... may be considered, so long as the court is careful not to engage in a weighing of the credibility of the in-court witness. The burden lies with the party seeking to admit the statement, and the test is not an easy one; the evidence of corroborating circumstances must *clearly* indicate trustworthiness.

*Davis,* 872 S.W.2d at 749. Obviously, the first two factors identified in *Davis* do not apply when, as in this cause, a declarant's statement against penal interest is offered to inculpate the accused.

When the State seeks to use a third party's out-of-court statement against penal interest to inculpate the defendant, the corroboration issue is closely related to the question whether the declarant's statement was truly self-inculpatory. As previously discussed, Ewing's out-of-court statements were not the

product of police questioning but spontaneous utterances to friends and coworkers, and Ewing had no apparent selfish motive for making the statements or any obvious reason to speak falsely regarding her connection to the murder of Elsie Fuller. In addition, Ewing told of washing appellant's clothes following the murder at least twice, once during the conversation overheard by Wells and again on the occasion described by Montez.[2] Montez testified that on the night she heard Ewing speak, Ewing was "very nervous, dropping things, being real—she wasn't herself." These circumstances clearly indicate that Ewing's self-incriminating statements were trustworthy. Insofar as Ewing's statements link appellant to the murder of Elsie Fuller, they also were corroborated by the footprint and DNA evidence. The district court did not err by admitting Ewing's out-of-court statements as statements against penal interest pursuant to rule 803(24). Point of error seven is overruled.

### 3. Defense evidence.

Through his own testimony and that of other defense witnesses, appellant sought to discredit the testimony of the prosecution witnesses and to establish an alibi for the weekend of the murder. In addition, appellant attempted to point the finger of guilt at Elisa Brazell, the deceased's niece, and John Fuller, the deceased's nephew. Appellant offered testimony that the deceased was angry with Brazell and had threatened to kill her.[3] With regard to Fuller, appellant presented evidence that he purchased a car around the time of the murder and took blood-stained clothes to the laundry following the murder. Appellant also sought to introduce a letter from Fuller to a friend in Cameron which read in part:

> Believe me, it ain't easy being a white knight, not many dragons left to slay. As far as my justifications for my actions. The car is going to be a joy to drive, & I can't wait to start to work. I'm finally

---

2. It is not clear from the record whether Ewing made the statements overheard by Wells and Montez on the same or different dates.

3. Brazell testified that she and her aunt had a good relationship and denied that they argued

during the days preceding the murder. Brazell and a friend testified without contradiction that Brazell was visiting the friend in Austin on the weekend of the murder.

learning tickel'em teete'em [sic]. Now if we can only learn to fly.

The State's objection that the letter was not relevant was sustained, a ruling that is the subject of appellant's ninth point of error.

■■■ Appellant made no effort at trial to demonstrate the relevance of the letter and now argues only that the letter "is certainly strange and with the facts surrounding this witness, it was error for the trial Court not to allow its admission thus cutting off questioning in this matter." Unlike appellant, we do not find the relevance of the letter to be self-evident. Further, appellant was permitted to question Fuller at length concerning Fuller's purchase of the automobile and its financing.[4] Appellant also fully inquired into Fuller's whereabouts on the weekend of his aunt's murder.[5] On this record, we cannot agree that the district court erred by excluding the letter from evidence. Point of error nine is overruled.

### 4. Sufficiency of evidence.

The thirteenth point of error is a challenge to the legal sufficiency of the evidence. Citing the defensive testimony, appellant argues that "[n]ot only did the Defense bring forth evidence that the Appellant was not guilty, it also brought forth evidence that other persons may have been involved." Appellant also argues that "absent the inadmissible testimony allowed in by the trial Court, there is insufficient evidence to sustain the conviction."

■■■ The jury was the exclusive judge of the witnesses' credibility and the weight to give their testimony. Tex.Code Crim.Proc. Ann. art. 36.13 (West 1981). Obviously, the jury found the testimony of the State's witnesses more credible than that of the defense witnesses, and we will not disturb that determination. Regarding the alleged inadmissible testimony, we have overruled appellant's points of error complaining of the admission of the incriminating blood, footprint, and

hearsay, and appellant's argument would be without merit in any event. In determining the legal sufficiency of the evidence to support a criminal conviction, the question is whether, after viewing *all* the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim.App.1991); *Griffin v. State*, 614 S.W.2d 155 (Tex.Crim.App.1981). An appellant may not bootstrap himself into an acquittal by arguing first that evidence was erroneously admitted and then that the erroneously admitted evidence must be discounted in considering the sufficiency of the evidence to sustain the conviction. *Collins v. State*, 602 S.W.2d 537 (Tex.Crim.App.1980).

■■■ We have detailed the principal incriminating evidence in our discussion of the previous points of error. From this evidence, a rational trier of fact could find beyond a reasonable doubt that appellant intentionally or knowingly caused the death of Elsie Fuller by stabbing her in the chest with a knife. Point of error thirteen is overruled.

### 5. "Bolstering."

■■■ Point of error four complains of the introduction in evidence of State's exhibit 61, the curriculum vitae of David Bing. Bing was the expert who performed the DNA analysis of the blood evidence and testified to the results. The document is nine pages long and details Bing's education and professional activities. Appellant argues that the exhibit was irrelevant because Bing had been qualified as an expert before the exhibit was offered and no attempt had been made to challenge Bing's standing as an expert. Evidence is irrelevant if it serves the sole purpose of convincing the factfinder that an unimpeached witness is worthy of credit, without substantively contributing to make

---

**4.** It was shown that Fuller purchased the car on the weekend preceding his aunt's murder. He made the down payment with money obtained by pawning property loaned to him for this purpose by the person to whom the letter was written.

**5.** The uncontradicted evidence is that Fuller spent the evening of January 29, 1993, with his friend in Cameron. He left town the next day and returned to his home in Tyler.

the existence of a consequential fact more or less probable than it would be without the evidence. *Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex.Crim.App.1993).

■ The information in the curriculum vitae was not introduced for the sole purpose of convincing the jury that Bing was worthy of belief. As appellant concedes, the information was relevant to prove Bing's expertise, and thus to lay the predicate for his opinion testimony. Appellant further concedes that no error would have been presented if the exhibit had been admitted in evidence a few minutes earlier, before the court recognized Bing as an expert. Indeed, Bing earlier testified to many of the facts contained in the curriculum vitae without objection by appellant. Under the circumstances, this point presents no error or, at most, harmless error. Tex.R.App.P. 81(b)(2); *see Harris v. State*, 790 S.W.2d 568, 587–88 (Tex. Crim.App.1989) (discussing application of harmless error rule). Point of error four is overruled.

### 6. Extraneous offenses.

In point of error ten, appellant contends the district court erred by permitting the State to adduce evidence of an extraneous offense at the guilt phase of trial. During cross-examination, appellant was asked by the prosecutor if he gave a friend, Sam Brooks, ten dollars on the afternoon of January 29, 1993. Appellant said that he did. When asked why, appellant replied that the money was to purchase beer. The State then asked for and received a hearing outside the jury's presence. The prosecutor informed the court that he had evidence that appellant gave Brooks the ten dollars to purchase crack cocaine. Over appellant's objection, the court ruled that the State would be permitted to adduce this evidence to impeach appellant's testimony.

When the jury returned, the prosecutor asked appellant if he gave Brooks the ten dollars to buy crack cocaine. Appellant said he did not. Later, the State called Sam Brooks as a rebuttal witness. Over appellant's further objection, Brooks testified that appellant gave him ten dollars on the afternoon in question, that he used the money to

purchase crack cocaine, and that he and appellant smoked the crack immediately thereafter. At the conclusion of Brooks's testimony, the court instructed the jury at appellant's request that the testimony was admitted only for the purpose of impeaching appellant's testimony and was not to be considered as evidence of appellant's guilt of the charged offense.

The court admitted the testimony regarding appellant's purchase and use of crack cocaine on two theories of impeachment: (1) to contradict appellant's testimony that he gave Brooks ten dollars to buy beer and (2) to demonstrate appellant's drug use as affecting his ability to accurately recall the events about which he was testifying. We will address each of these theories in turn.

■ A party may not cross-examine a witness on a collateral matter, then contradict the witness's answer. *Shipman v. State*, 604 S.W.2d 182, 183–84 (Tex.Crim.App.1980). A matter is collateral if the cross-examining party would not be entitled to prove it as part of his case tending to establish his plea. *Bates v. State*, 587 S.W.2d 121, 133 (Tex. Crim.App.1979). The State made no effort to link appellant's drug use on the afternoon of January 29 with the murder of Elsie Fuller, and we are unable to conclude that appellant's purchase and use of cocaine would have been admissible as part of the State's case-in-chief. *See Rogers v. State*, 853 S.W.2d 29 (Tex.Crim.App.1993); *Garrett v. State*, 875 S.W.2d 444 (Tex.App.—Austin 1994, pet. ref'd) (discussing "same transaction contextual evidence"). By allowing the State to adduce evidence of appellant's drug use to rebut his denial of such conduct during cross-examination, the State was erroneously permitted to impeach appellant on a collateral matter.

It has been stated that, to test a witness's capacity for correct observation, it may be shown that the witness was intoxicated when the matter about which he testifies occurred. *Kennedy v. State*, 150 Tex.Crim. 215, 200 S.W.2d 400, 404 (App.1947). On the other hand, the rules of evidence provide: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credi-

bility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence." Tex.R.Crim. Evid. 608(b). In *Ramirez v. State*, 802 S.W.2d 674 (Tex.Crim.App.1990), a prosecution for aggravated sexual assault, the victim's mother testified for the defense and stated that she was unaware of any improper sexual activity involving her daughter and the defendant. On cross-examination, the prosecutor was permitted to question the witness about her heroin use. The court held that this questioning was reversible error, citing rule 608(b) and rejecting the State's argument that the witness's heroin use was proper impeachment under the *Kennedy* rationale. The court noted, however, that there was no evidence that the witness was under the influence of heroin at the time the events she described allegedly occurred. Thus, *Ramirez* leaves unanswered the question whether the impeachment theory announced in *Kennedy* has survived the adoption of rule 608(b).

■ Assuming without deciding that proof of appellant's purchase and use of cocaine violated rule 608(b), the error was harmless beyond a reasonable doubt. Tex. R.App.P. 81(b)(2); *Harris*, 790 S.W.2d at 587–88. After Brooks testified, no further evidence was adduced on the subject of appellant's drug use. The subject was mentioned only in passing during the State's jury argument. The evidence was not so inflammatory as to suggest the impossibility of the jury following the district court's limiting instruction. Because we believe the extraneous offense evidence did not disrupt the jury's orderly evaluation of the evidence, we overrule point of error ten.

Appellant also urges that extraneous offense evidence was improperly adduced during the punishment phase of trial. Defense witness Larry Jackson testified that he had known appellant most of his life and that, in his opinion, appellant was a peaceful and law-abiding person. During cross-examination,

the State asked Jackson if he "ever heard that [appellant] was involved in a stabbing at the Alcoa Inn" and if he "heard about a complaint against [appellant] made by a—a woman here in Cameron for aggravated sexual assault." Appellant objected to "these specific instances of conduct unless the State can show that there's been some kind of conviction." Appellant now argues that the State was required to prove appellant's guilt of the unadjudicated offenses beyond a reasonable doubt. Tex.Code Crim.Proc.Ann. art. 37.07, § 3(a) (West Supp.1995).

■ Appellant's contention on appeal does not comport with his trial objection and is without merit in any event. The State was not attempting to prove appellant's commission of unadjudicated offenses pursuant to article 37.07, but to test the weight of Jackson's character testimony. A witness who testifies to the defendant's good character may be cross-examined regarding relevant specific misconduct by the defendant. *Reynolds v. State*, 848 S.W.2d 785, 788 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd); *Bratcher v. State*, 771 S.W.2d 175, 186–87 (Tex.App.—San Antonio 1989, no pet.); *Lancaster v. State*, 754 S.W.2d 493, 495 (Tex. App.—Dallas 1988, pet. ref'd); Tex.R.Crim. Evid. 405(a).[6] Appellant did not challenge the factual basis of the State's questions at trial and there is nothing in the record to suggest that the questions were asked in bad faith. Appellant's trial objection was correctly overruled. Point of error eleven is overruled.

### 7. Jury misconduct.

Appellant contends the district court erred by overruling his motion for mistrial, and later his motion for new trial, based on juror misconduct. On the fourth day of this seven-day trial, it was learned that a juror, Terrence Johnson, had given rides to and from the courthouse to Nikki Blaylock, who had been subpoenaed by the State as a witness. Johnson and Blaylock had also had lunch together. At a hearing outside the jury's

---

**6.** Because Jackson was an opinion witness, the prosecutor arguably should have asked him if he *knew* of the incidents in question rather than if he had *heard* of them. *Reynolds*, 848 S.W.2d at 788; *Bratcher*, 771 S.W.2d at 187; *Lancaster*, 754 S.W.2d at 495; 1 *Guide to Texas Rules* § 405.2.4.

presence, Blaylock testified that she did not know that such conduct was improper and assured the court that she had not discussed the case with Johnson. In chambers, Johnson admitted knowing that Blaylock was a potential witness but said he did not realize that it was improper for him to fraternize with her away from the courthouse. Johnson assured the court that he had not discussed the case with Blaylock, that Blaylock had expressed no opinion regarding appellant's guilt, and that his association with Blaylock would not affect his consideration of her testimony if she were called as a witness. Needless to say, the court vigorously admonished Johnson and Blaylock to have no further dealings with each other during the course of the trial.

The court overruled appellant's motion for mistrial, citing the absence of evidence that Johnson and Blaylock discussed the case. Blaylock did not testify before the jury. After the trial was concluded, Johnson was ordered to serve thirty days in jail for contempt of court. Blaylock was also held in contempt and spent three days in jail.

Appellant moved for new trial based on the unauthorized communications between Johnson and Blaylock. Tex.R.App.P. 30(b)(7). In her testimony at the new trial hearing, Blaylock continued to assert that she did not discuss any aspect of the case with Johnson. Blaylock said she had no further contact with Johnson after being admonished by the district court. Johnson also testified that he never discussed the facts of the case with Blaylock. He further testified that neither his association with Blaylock nor his conference with the court in chambers influenced his deliberations as a juror. A second juror, Lanelle Fikes, testified that she sat next to Johnson in the jury room and never heard him say anything to indicate that he had any knowledge about the case other than what was brought out in the courtroom. In response to a question by the court, Fikes stated that Johnson gave no indication of having been influenced in any way by any outside communication.

■ The rule against jurors conversing with unauthorized persons about a case is so strong that injury to the accused is presumed. *McMahon v. State,* 582 S.W.2d 786, 793 (Tex.Crim.App.1978); *Freeman v. State,* 838 S.W.2d 772, 778 (Tex.App.—Corpus Christi 1992, pet. ref'd). The presumption is rebuttable, however. If it is shown that the case was not discussed or that nothing prejudicial to the accused was said, a new trial is not required. *McMahon,* 582 S.W.2d at 793; *Freeman,* 838 S.W.2d at 778. In light of the undisputed testimony that appellant's case was not discussed during the unauthorized meetings between Johnson and Blaylock, the district court did not abuse its discretion by overruling the motion for new trial and earlier motion for mistrial. Point of error eight is overruled.

■ In point of error twelve, appellant contends the court impermissibly discussed the evidence in the case when ruling on the motion for new trial. Tex.R.App.P. 31(e)(2). Appellant refers to a statement by the court explaining that it was overruling the motion for new trial because it found that Johnson and Blaylock did not discuss the case and that appellant was not prejudiced by their unauthorized conversations. If the court's statement of its findings was a violation of rule 31(e)(2), appellant is not entitled to relief because he neither alleges nor demonstrates harm. *Whitmore v. State,* 570 S.W.2d 889, 892 (Tex.Crim.App.1976); *Tate v. State,* 834 S.W.2d 566, 571 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). Point of error twelve is overruled.

### 8. Change of venue.

Finally, appellant contends the district court erred by overruling his motion for change of venue. In the motion, appellant urged that newspaper and broadcast coverage of the crime and of his arrest had created such a prejudice against him that a fair trial in Milam County was impossible. Tex. Code Crim.Proc.Ann. art. 31.03(a)(1) (West 1989). The motion was supported by the affidavits of appellant, his mother, and three other persons. The State filed two controverting affidavits.

In their testimony at the hearing on the motion, appellant's affiants again expressed the opinion that appellant could not receive a

fair trial in Milam County. None of these witnesses, however, had actually heard anyone in the community express the opinion that appellant was guilty of the offense. The State's affiants also testified. According to them, this case had not aroused an unusual amount of interest or discussion in the community. The State's witnesses testified that they had neither seen nor heard anything to indicate a prejudice against appellant that would prevent him from receiving a fair trial.

Copies of newspaper stories, transcripts of radio news broadcasts, and a videotape of television news reports were admitted in evidence at the venue hearing. These stories and broadcasts appear to be factually accurate accounts of the murder and subsequent investigation, and of appellant's arrest, indictment, and initial court appearances. The most recent of these news accounts reported the upcoming hearing on appellant's motion for change of venue.

The change of venue hearing was conducted on September 10, 1993. Jury selection began on January 24, 1994, and took less than a day. Although the district court had indicated that it would reconsider the change of venue request following jury selection, appellant did not ask the court to do so. Appellant does not contend that selecting a jury was unusually difficult.

A defendant seeking a change of venue bears a heavy burden to prove the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful. *Narvaiz v. State,* 840 S.W.2d 415, 428 (Tex.Crim.App.1992). A motion for change of venue is addressed to the discretion of the trial court and an appellate court may reverse only for an abuse of discretion. *Id.* The trial court's decision will not be disturbed so long as it is within the realm of reasonableness given the record that was before it. *Id.* On this record, appellant has not shown the district court abused its discretion by overruling the motion for change of venue. Point of error one is overruled.

The judgment of conviction is affirmed.