TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00478-CR






Elsy Edith Orellana, AKA Elsy Edith Drumon, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT


NO. 47,870, HONORABLE OLIVER KELLEY, JUDGE PRESIDING







 A jury found appellant guilty of the offense of criminal mischief with a pecuniary
loss of $1,500 or more but less than $2,000. See Tex. Penal Code Ann. § 28.03 (West Supp.
1999). The trial court assessed punishment at confinement for two years in a state jail, probated,
and a fine of $1,500. Appellant asserts two points of error, contending that the trial court erred
by (1) allowing the State to impeach appellant on a collateral matter, and (2) admitting evidence
of an extraneous offense without making the necessary determination of its admissibility. We will
sustain appellant's first point of error and reverse the conviction.

 Appellant and Donald Drumon had been separated several months and a divorce 
suit was pending. Drumon had been dating the victim Kim Eakin. On August 3, 1997, Killeen
police officer Alan Teston responded to a call from a Dora Hunter that a neighbor's house had
been damaged. Upon arrival at the designated house, Teston observed that a house owned by
Eakin had been painted with black paint. An onlooker advised Teston and fellow officer John
Grider that someone was hiding in a nearby bush. Teston and Grider found appellant hiding
between a bush and a privacy fence. Testimony of the officers reflected that appellant told them
she was trying to find a friend's home in the area, and had hidden in the bushes when she felt that
a man was following her.

 Black paint was observed on appellant's fingers and a can of black paint was found
nearby. After being taken into custody, appellant volunteered that her husband knew a lady who
lived in the house that had been damaged. Fingerprint expert Edward Barfield testified that
appellant's right thumb print was on the black spray paint can.

 Eakin testified that when she left church on the day in question, she found that her
car had been spray painted in a way that was similar to the painting she was to observe on her
house. Receipts showed the cost for repainting Eakin's house was $1,800 and the cost incurred
for repainting her car was $2,249. Eakin stated that she had dated appellant's husband until she
learned that he had misrepresented his marital status.

 Appellant testified that a person who identified herself as "Shorty" called and told
her that if she wanted to know the truth about Donald and Kim to meet her at a designated address. 
Eakin's testimony had identified a person known as "Shorty" as her boss at the barber shop where
she worked. Appellant stated that when she arrived at the designated address, "Shorty" suggested
that they watch from the bushes. After a few minutes, "Shorty" stated she needed to leave and
said, "I will be right back." Appellant testified that "Shorty" left a can of black spray paint that
appellant touched. Appellant related that the person she told the officers she was looking for was
"Shorty." Appellant's defense was that she had been set up to enable her husband to get a divorce.

 The following colloquy occurred between the prosecutor and appellant during cross-examination of appellant:

Q: [Prosecutor] Okay. Are you the kind of person that gets mad and angry
and tears up people's stuff?


A: [Appellant] No, sir.


Q: Did you take a ball peen hammer and beat your husband's pickup truck and
put 105 dents in it?


A: No, I did not.


Q: Did you pour sugar in the gas tank and ruin the engine of his car?


A: No, sir.


Q: You are just not capable of being mean and malicious to other people's
property?


A: No, sir.



 Over appellant's objection that the State was attempting to impeach appellant's
testimony on collateral matters by using extraneous offenses, the State was permitted to adduce
testimony on direct examination of Donald Drumon relative to appellant damaging his pickup truck
while he (Drumon) was in the Bell County jail as a result of appellant having filed an assault
complaint against him. Drumon stated that something was placed in the gas tank of his pickup at
their home. The cost of repairing the vehicle was approximately $3,500. The trial court in which
their divorce was pending ordered appellant to return the vehicle to Drumon. When Drumon
picked his truck up at his attorney's office, Drumon stated that there were approximately 105 dents
in the truck. The cost of repairing the dents was $6,500.

 A party may not cross-examine a witness on a collateral matter, then contradict the
witness's answer. See Shipman v. State, 604 S.W.2d 182, 183 (Tex. Crim. App. 1980). A matter
is collateral if the cross-examining party would not be entitled to prove it as part of his case
tending to establish his plea. See Bates v. State, 587 S.W.2d 121, 133 (Tex. Crim. App. 1979). 
By allowing the State to adduce evidence of appellant's alleged damage to Drumon's vehicle, the
State was erroneously permitted to impeach appellant on collateral matters. See Drone v. State,
906 S.W.2d 608, 615 (Tex. App.--Austin 1995, pet ref'd).

 We must next determine whether the error requires reversal. Any non-constitutional error that does not affect substantial rights must be disregarded. See Tex. R.
App. P. 44.2(b). The State's case evidence against appellant was persuasive. However, our
inquiry in determining whether the error was harmless goes beyond this point. The Court of
Criminal Appeals in Harris v. State, 790 S.W.2d 568, 587-88 (Tex. Crim. App. 1989), provided
reviewing courts with the following analysis in determining whether the error was harmless:


In summary, a reviewing court in applying the harmless error rule should not focus
upon the propriety of the outcome of the trial. Instead, an appellate court should
be concerned with the integrity of the process leading to the conviction. 
Consequently, the court should examine the source of the error, the nature of the
error, whether or to what extent it was emphasized by the State, and its probable
collateral implications. Further, the court should consider how much weight a
juror would probably place upon the error. In addition, the Court must also
determine whether declaring the error harmless would encourage the State to repeat 
it with impunity. In summary, the reviewing court should focus not on the weight
of the other evidence of guilt, but rather on whether the error at issue might
possibly have prejudiced the jurors' decision-making; it should ask not whether the
jury reached the correct result, but rather whether the jurors were able properly to
apply law to facts in order to reach a verdict. Consequently, the reviewing court
must focus upon the process and not on the result. In other words, a reviewing
court must always examine whether the trial was an essentially fair one. If the
error was of a magnitude that it disrupted the juror's orderly evaluation of the
evidence, no matter how overwhelming it might have been, then the conviction is
tainted. Again, it is the effect of the error and not the other evidence that must
dictate the reviewing court's judgment.



 While Harris predated the non-constitutional harmless error rule, we believe this
discussion of the factors relevant to determining harmless error is no less valid. The improperly
admitted alleged offenses resulted in over double the amount of monetary damage caused by the
primary offense. In the State's opening and closing arguments, the prosecutors directed the jury's
attention to the damage appellant had inflicted on her estranged husband's truck. We are unable
to say with fair assurance that the error did not influence the jury, and thus did not affect the
substantial rights of the accused. See Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998). Appellant's first point of error is sustained.

 The judgment of conviction is reversed and the cause remanded.



 

 Tom G. Davis, Justice

Before Chief Justice Aboussie, Justices Kidd and Davis*

Reversed and Remanded

Filed: April 8, 1999 

Do Not Publish


* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).



rim. App. 1980). A matter
is collateral if the cross-examining party would not be entitled to prove it as part of his case
tending to establish his plea. See Bates v. State, 587 S.W.2d 121, 133 (Tex. Crim. App. 1979). 
By allowing the State to adduce evidence of appellant's alleged damage to Drumon's vehicle, the
State was erroneously permitted to impeach appellant on collateral matters. See Drone v. State,
906 S.W.2d 608, 615 (Tex. App.--Austin 1995, pet ref'd).

 We must next determine whether the error requires reversal. Any non-constitutional error that does not affect substantial rights must be disregarded. See Tex. R.
App. P. 44.2(b). The State's case evidence against appellant was persuasive. However, our
inquiry in determining whether the error was harmless goes beyond this point. The Court of
Criminal Appeals in Harris v. State, 790 S.W.2d 568, 587-88 (Tex. Crim. App. 1989), provided
reviewing courts with the following analysis in determining whether the error was harmless:


In summary, a reviewing court in applying the harmless error rule should not focus
upon the propriety of the outcome of the trial. Instead, an appellate court should
be concerned with the integrity of the process leading to the conviction. 
Consequently, the court should examine the source of the error, the nature of the
error, whether or to what extent it was emphasized by the State, and its probable
collateral implications. Further, the court should consider how much weight a
juror would probably place upon the error. In addition, the Court must also
determine whether declaring the error harmless would encourage the State to repeat 
it with impunity. In summary, the reviewing court should focus not on the weight
of the other evidence of guilt, but rather on whether the error at issue might
possibly have prejudiced the jurors' decision-making; it should ask not whether the
jury reached the correct result, but rather whether the jurors were able properly to
apply law to facts in order to reach a verdict. Consequently, the reviewing court
must focus upon the process and not on the result. In other words, a reviewing
court must always examine whether the trial was an essentially fair one. If the
error was of a magni