MEMORANDUM OPINION




No. 04-02-00084-CR



James MITCHELL, Jr. ,


Appellant



v.



The STATE of Texas,


Appellee



From the 63rd Judicial District Court, Kinney County, Texas


Trial Court No. 00-02-01939


Honorable George M. Thurmond, Judge Presiding



Opinion by: Catherine Stone, Justice


Sitting: Catherine Stone, Justice

 Sarah B. Duncan, Justice

 Sandee Bryan Marion, Justice


Delivered and Filed: June 25, 2003


AFFIRMED

 A jury convicted James Mitchell, Jr. of the felony offense of taking a wildlife resource
without the consent of the landowner. See Tex. Parks & Wild. Code Ann. § 61.022 (Vernon
2002). The trial court sentenced Mitchell to a 180-day term of imprisonment and fined him $1,500.
Mitchell presents six issues on appeal. We affirm Mitchell's conviction. 

 

Background

 James Mitchell, Jr., a Louisiana resident, was in Texas with his father, James Mitchell, Sr.
("James"), son, Blake Mitchell ("Blake"), and son's friend, Timothy Landry ("Timothy") to hunt
Texas wildlife. On December 21, 1999, Mitchell drove Blake and Timothy from the Amber Sky
Motel in Uvalde County out to Michael Harris's ranch, which is in a remote part of Kinney County.
Neither Mitchell nor the boys had permission to hunt on Harris's property.

 Mitchell dropped the boys off and went into the nearby town. Blake and Timothy soon
harvested three whitetail deer. After their successful hunt, Mitchell met the boys and picked up their
hunting rifle. Mitchell left the boys to drag out their deer. When Blake and Timothy were in the
process of dragging their deer off of the Harris property, United States Border Patrol agents spotted
the boys. Thinking Blake and Timothy were illegal aliens trying to cross into Texas, the Border
Patrol agents apprehended the boys. When they did, the agents discovered the boys were hunters
trespassing on the Harris Ranch. The agents immediately contacted the Texas Parks and Wildlife
Department. 

 The Texas Parks and Wildlife Department conducted an investigation and determined Blake
and Timothy had killed their deer on Harris's ranch without Harris's consent. Blake and Timothy
were subsequently charged with taking a wildlife resource without the consent of landowner.
Mitchell was also charged with, and found guilty of, this same offense. 

 Discussion


 In six issues, Mitchell contends: (1) the trial court erroneously denied his motion to set aside
the indictment for failing to allege a culpable mental state; (2) the trial court erroneously admitted
hearsay statements; (3) the trial court deprived him of his right to confront several witnesses; (4) the
trial court erroneously denied his limiting instruction concerning the admission of extraneous offense
evidence; (5) the evidence is legally insufficient to support his conviction; and (6) the evidence is
factually insufficient to support his conviction. 

Motion to Quash the Indictment


 In his fourth issue, Mitchell contends the trial court erred by denying his motion to quash the
indictment. Mitchell complains that the indictment is defective because it does not allege a culpable
mental state. The record reveals that despite being afforded the opportunity to challenge the
indictment at a pre-trial hearing on February 12, 2001, Mitchell's first attorney did not file any pre-trial motions. Mitchell obtained new counsel on May 9, 2001. On June 18, 2001, Mitchell's new
attorney filed several motions with the court -- none of which was a motion to quash the indictment.
When trial on the merits began on July 23, 2001, defense counsel finally filed a motion to quash the
indictment. The trial court denied Mitchell's motion.

 A defendant waives a complaint concerning the indictment if he does not object to a defect,
error, or irregularity of form or substance in an indictment before the date on which the trial on the
merits commences. Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon Supp. 2003); Ledesma v.
State, 993 S.W.2d 361, 369 (Tex. App.--Fort Worth 1999, pet. ref'd). The jury in this case was
seated and sworn on July 23, 2001. This was the date Mitchell's trial commenced for purposes of
article 1.14(b). See Ledesma, 993 S.W.2d at 369 (recognizing trial on the merits commences at the
time the jury is impaneled and sworn). Because Mitchell filed his motion to quash on the day his
trial commenced, Mitchell waived any complaint concerning the indictment. See id. Mitchell's
fourth issue is overruled.

 Mitchell contends the trial court should still have considered his motion to quash the
indictment because his motion was "of constitutional dimension," citing Revia v. State, 649 S.W.2d
625 (Tex. Crim. App. 1983). In Revia, the Court of Criminal Appeals held, based upon its previous
holding in Enriquez v. State, 429 S.W.2d 141 (Tex. Crim. App. 1968), that the time limitations found
in article 28.01 of the Code of Criminal Procedure do not apply to motions for change of venue
because such motions involve questions of constitutional dimension. Id. at 626-27. Mitchell,
however, neither explains what "constitutional dimension" is implicated in the present matter nor
explains why Revia is analogous to the case at bar. Therefore, we believe Mitchell's argument lacks
merit. 

Sufficiency of the Evidence


 In his fifth and sixth issues, Mitchell contends the evidence is insufficient to support his
conviction. When a party attacks the legal sufficiency of the evidence, we view the evidence in a
light most favorable to the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319 (1979); Mason v. State, 905 S.W.2d 570, 574 (Tex. Crim. App. 1995). In reviewing the factual
sufficiency of the evidence, we ask whether a neutral review of all the evidence, both for and against
the finding, demonstrates that the proof of guilt is either so obviously weak as to undermine
confidence in the jury's determination, or, although adequate if taken alone, is greatly outweighed
by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We will set aside
the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Wesbrook v. State, 29 S.W.3d 103, 112 (Tex. Crim. App. 2000). During our review of
the sufficiency of the evidence, we must be appropriately deferential to the fact finder; we may not
substitute our own judgment for that of the jury or substantially intrude on the jury's role as the sole
judge of the weight and credibility of witness testimony. Johnson, 23 S.W.3d at 7. 

 Under the Texas Parks and Wildlife Code, "[n]o person may hunt or catch by any means or
method or possess a wildlife resource at any time and at any place covered by this chapter unless the
owner of the land or water, or the owner's agent, consents." See Tex. Parks & Wild. Code Ann.
§ 61.022(a) (Vernon 2002). In the case at bar, Mitchell was charged, both as a principal and as a
party, with taking whitetail deer without the consent of landowner Michael Harris. The record,
however, is devoid of any evidence which would justify a finding that Mitchell was guilty of the
offense as a principal. Thus, any culpability of Mitchell would be as a party. See Tex. Penal Code
Ann. § 7.02(a)(2) (Vernon 2003) ("[a] person is criminally responsible for an offense committed by
the conduct of another if . . . acting with intent to promote or assist the commission of the offense,
he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.").
Where the evidence shows that a person was not the primary actor, but at most, responsible for the
actions of the primary actor, the State must prove conduct constituting an offense, plus an act by the
accused done with the intent to promote or assist such conduct. Beier v. State, 687 S.W.2d 2, 3 (Tex.
Crim. App. 1985).

Legal Sufficiency 

 Mitchell does not dispute that Harris did not give anyone permission to hunt on his ranch.
Nor does Mitchell dispute that the deer Blake and Timothy shot were in fact whitetail deer.
Mitchell's only contentions are that the evidence is insufficient to support the jury's finding that
Blake and Timothy actually shot the deer on the Harris Ranch and that he promoted, assisted, aided,
or attempted to aid Blake and Timothy in the commission of the offense. The evidence presented
against Mitchell consisted of the testimony of Dennis Gazaway, Juan Martinez, Stanley Myers, and
Michael Harris. 

Dennis Gazaway
Dennis Gazaway, a Texas Parks and Wildlife Department Game Warden, testified he was
dispatched to a J.C. Penny store in Uvalde, Texas to investigate a report of persons dumping animal
entrails. Gazaway discovered that the persons responsible for the dumping, Blake and Timothy,
were staying at the Amber Sky Motel in Uvalde. When Gazaway arrived at the Amber Sky Motel,
he found Mitchell's father James. According to Gazaway, James told him that Blake and Timothy
had been hunting in Edwards County, Texas and had mistakenly dumped their game's entrails behind
J.C. Penny. Gazaway proceeded to inspect the game the boys had harvested and discovered that the
game was improperly tagged by the boys. Gazaway inquired into the boys' whereabouts and learned
that they were at lunch with Mitchell and would be back soon. When Mitchell, Blake, and Timothy
had not returned some thirty minutes later, James told Gazaway that it was possible that the three
had gone hunting at another ranch after their lunch. Gazaway waited for their return.

 After several hours of waiting, Gazaway received a call from the United States Border Patrol
Dispatcher, indicating the Border Patrol had apprehended Blake and Timothy for killing deer on the
Harris Ranch. Gazaway proceeded to the Border Patrol checkpoint to investigate. When Gazaway
arrived at the checkpoint, Mitchell, Blake, and Timothy were there. After some brief questioning,
Gazaway, Mitchell, Blake, and Timothy went to the area where Blake and Timothy were
apprehended. Once there, Gazaway discovered three whitetail deer carcasses. Gazaway also noticed
that Blake and Timothy had dragged the deer off of the Harris Ranch, as there were drag marks
leading from the deer carcasses to the Harris property. 

 The following day, Gazaway returned to the Harris Ranch to continue his investigation.
Gazaway inspected the area where the drag marks originated and determined that the deer were
actually shot on the Harris Ranch. According to Gazaway, he believed the deer were shot on the
Harris Ranch because of the blood splatters he found near the deer drags and the damage he observed
to the ground where the deer had fallen on the property. Gazaway also discovered some footprints
leading to a mesquite tree on the Harris Ranch near where the drag marks began. Under the tree,
Gazaway found a spent .308 caliber rifle shell and one live .308 caliber rifle shell, the same caliber
as the rifle recovered from the truck Mitchell was driving the previous night. (1) 

Juan Martinez Juan Martinez, the United States Border Patrol Agent who apprehended Blake and Timothy,
testified that he had observed Blake and Timothy dragging "something" off of the Harris Ranch.
According to Martinez, once Blake and Timothy were apprehended, they told him that one of their
fathers had dropped them off to hunt, they had shot several deer, one of their fathers had come by
and picked up their rifle, and one of their fathers was returning to pick them up. 

 Stanley Myers
Stanley Myers, a United States Border Patrol Agent, testified he had observed Blake and
Timothy dragging "something" off of the Harris Ranch. Myers notified two other border patrol
agents to apprehend Blake and Timothy. According to Myers, Blake and Timothy evaded the agents
for approximately 30-35 minutes before they were caught. When Blake and Timothy were brought
back to the Border Patrol checkpoint, they informed Myers that Timothy had shot a deer, they were
waiting for one of their fathers to pick them up, and that they did not have any firearms on them
because they had given their gun to one of their fathers. Myers subsequently went to the area where
Blake and Timothy were apprehended. Once there, he found the deer Blake and Timothy had been
dragging and followed the drag marks. Myers determined that the footprints next to the drag marks
matched Blake's and Timothy's shoe prints.

Michael Harris
Michael Harris, the owner of the Harris Ranch property, testified hunting is allowed on his
land only after he gives written permission to hunt and the hunters sign a liability release form.
According to Harris, he had not given Mitchell, Blake, or Timothy permission to hunt whitetail deer
on his land. Nor did he have any of them sign a liability release form. 

 Viewing the evidence in the light most favorable to the verdict, we hold a rational trier of fact
could have found that Mitchell was a party to the offense of taking whitetail deer without the consent
of Harris. Therefore, we overrule Mitchell's fifth issue.

Factual Sufficiency

 Mitchell also contends the evidence is factually insufficient to support the jury's findings.
Mitchell points out that Agent Myers's testimony that he saw Blake and Timothy dragging
"something" on the Harris property was not credible because Myers's official report from that night
indicates he saw the boys under a highway overpass and not on the Harris Ranch. Mitchell's
argument, however, ignores the fact that the jury is the sole judge of the facts, the witness's
credibility, and the weight to be given the evidence. Johnson, 23 S.W.3d at 7. The jury may believe
or disbelieve any portion of the witness's testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex.
Crim. App. 1986). Contradictions or conflicts in the witness's testimony do not destroy the
sufficiency of the evidence, but go to its weight and to the credibility the jury assigns to the witness.
Beckham v. State, 29 S.W.3d 148, 151 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd). We
further note that the jury heard Agent Martinez testify that he too had observed Blake and Timothy
on the Harris Ranch. The jury simply could have believed Agent Martinez's testimony on this
particular matter. 

 Mitchell also contends there is insufficient evidence to support the finding that the .308
caliber rifle taken from the truck Mitchell was driving was the one Blake and Timothy used to shoot
their deer. In support of this contention, Mitchell cites to Gazaway's testimony that he failed to
perform ballistics tests to determine whether the .308 caliber rifle found in Mitchell's truck fired the
.308 caliber rounds found on the Harris Ranch. He also cites Gazaway's testimony that no
fingerprints were collected from the .308 rounds to prove Blake or Timothy handled the rounds
found on the ranch. Mitchell further emphasizes that the Harris Ranch has been leased to hunters
since 1996 and that a .308 caliber rifle is a "common deer rifle." Once again, the jury was the sole
judge of the facts. Johnson, 23 S.W.3d at 7; Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim.
App. 1981). Therefore, it was within the exclusive province of the jury to consider the
circumstantial evidence presented and weigh such evidence as it deemed fit. See Johnson, 23
S.W.3d at 7; Penagraph, 623 S.W.2d at 343. 

 Lastly, Mitchell claims that Gazaway's blood splatter testimony is insufficient to support the
jury's finding that Blake and Timothy actually shot the deer on Harris's property because "his
finding of blood splatter was all encompassing to the entire drag mark which included land on the
Harris Ranch as well as land outside the ranch." Mitchell's argument, however, ignores Gazaway's
testimony that he also believed the deer were shot on the Harris property because he saw damage to
the ground where the deer had fallen on the ranch, and that such damage indicated that was the place
where the deer had been shot. (2) Given that the jury is the sole judge of the facts, the witness's
credibility, and the weight to be given the evidence, the jury was free to weigh Gazaway's testimony
regarding the ground damage more heavily than his blood splatter testimony. See Johnson, 23
S.W.3d at 7; Penagraph, 623 S.W.2d at 343. 

 Viewing the evidence in a neutral light, we hold that the jury's verdict is not so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust. Mitchell's sixth issue
is therefore overruled.

Hearsay Evidence
In his first issue, Mitchell argues the trial court erred by admitting the testimony of Agents
Martinez and Myers concerning out-of-court statements made by Blake and Timothy when they were
apprehended. Specifically, Mitchell complains that the trial court erred by admitting: (1) Agent
Martinez's testimony that Blake and Timothy told him one of their fathers had dropped them off to
hunt, they had shot several deer, one of their fathers had come by and picked up their rifle, and that
one of their fathers was returning to pick them up; and (2) Agent Myers's testimony that Blake and
Timothy told him that Timothy had shot a deer, they were waiting for one of their fathers to pick
them up, and they did not have any firearms on them because they had given their gun to one of their
fathers. We disagree.

 Hearsay is a statement, other than one made by the declarant while testifying at the trial,
offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is
inadmissable unless expressly excepted or excluded from the general rule by statute or the rules of
evidence. Tex. R. Evid. 802. One such exception is a statement against interest. See Tex. R. Evid.
803(24). A statement against interest is a statement at the time of its making that was so far contrary
to the declarant's interest or so far tended to subject the declarant to civil or criminal liability, a
reasonable person in the declarant's position would not have made it unless he believed it to be true. 
Id. 

 For a statement to be admissible under Rule 803(24), two requirements must be met: (1) the
statement in question must expose the declarant to criminal liability; and (2) there must be
corroborating circumstances that clearly indicate the trustworthiness of the statement. See Dewberry
v. State, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999); Bingham v. State, 987 S.W.2d 54, 57 (Tex.
Crim. App. 1999). The party seeking admission of the statement has the burden of producing
corroborating evidence to prove the trustworthiness of the statement. Cofield v. State, 891 S.W.2d
952, 955 (Tex. Crim App. 1994). There is no definitive test to determine whether corroborating
circumstances exist for purposes of Rule 803(24). "Any number of factors may be considered in this
inquiry, including whether the guilt of the declarant is inconsistent with the guilt of the accused,
whether the declarant was so situated that he might have committed the crime, the timing of the
declaration and its spontaneity, the relationship between the declarant and the party to whom the
declaration was made, and the existence of independent corroborating facts." Dewberry, 4 S.W.3d
at 751; Davis v. State, 872 S.W.2d 743, 749 (Tex. Crim. App. 1994). The first two factors,
however, do not apply when it is the State attempting to offer a statement against interest to prove
the defendant's guilt. Drone v. State, 906 S.W.2d 608, 613 (Tex. App.--Austin 1995, pet. ref'd).
Furthermore, the court is required to consider both circumstances which support as well as those
which undermine the reliability of the declarant. Davis, 872 S.W.2d at 749. 

 Whether otherwise inadmissible hearsay comes in under one of the exceptions or exclusions
to the hearsay rule is a question for the trial court to resolve and is reviewable under an abuse of
discretion standard. McNair v. State, 75 S.W.3d 69, 71 (Tex. App.--San Antonio 2002, no pet.).
As a reviewing court, we determine whether the record supports the trial court's ruling. Id. Under
such a review, if the trial court's decision is correct on any theory of law which finds support in the
evidence, it will be sustained. Id. We now turn to whether the agents' testimony concerning Blake's
and Timothy's out-of-court statements are admissible under Rule 803(24).

 After considering the statements in question, we are of the opinion that the statements are
admissible. First, Blake's and Timothy's statements are self-inculpatory because they expose the
boys to liability under the Texas Parks and Wildlife Code for shooting their deer on the Harris Ranch
without Harris's permission. Second, although the statements appear to be the product of custodial
interrogation by law enforcement officials, the statements nevertheless bore the necessary indicia of
trustworthiness. The record indicates no vehicles were found in the remote area of Kinney County
where the boys were discovered. The boys had no weapons on them when they were apprehended
dragging their deer off of the Harris property. The record further indicates that when Mitchell,
Blake's father, came to the Border Patrol checkpoint to retrieve Blake and Timothy, Timothy's .308
caliber rifle was found inside the vehicle Mitchell was driving. This rifle was the same caliber as
shell casings found on the Harris property near where Blake and Timothy had killed their deer. Such
circumstances indicate Blake's and Timothy's self-incriminating statements were trustworthy
because they independently verify the statements the boys made to the Border Patrol Agents.
Therefore, the trial court did not err by admitting the aforementioned out-of-court statements.

 In his first issue, Mitchell also argues the trial court erred by admitting Gazaway's testimony
concerning out-of-court statements made by Mitchell's father, James. As previously discussed,
Gazaway testified James told him that: (1) Blake and Timothy had mistakenly dumped their game's
entrails behind J.C. Penny; (2) the boys were at lunch with Mitchell and would be back soon; and
(3) when Blake, Timothy, and Mitchell had not returned from lunch, that it was possible that the
three had gone hunting at another ranch.

 Assuming Gazaways's testimony regarding James's statements are inadmissible, we conclude
the admission of the statements did not harm Mitchell. Non-constitutional error that does not affect
the substantial rights of the defendant must be disregarded. Tex. R. App. P. 44.2(b). Substantial
rights are not affected by the erroneous admission of evidence if the appellate court, after reviewing
the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight
effect. Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). Here, besides Gazaway's
testimony concerning James's statements, the record contains other evidence linking Mitchell to the
offense in question. Because any conclusions the jury could have drawn from James's out-of-court
statements could have also been drawn from the testimony of Agent Martinez or Agent Myers, we
conclude no harm resulted from the admission of the alleged hearsay statements. Mitchell's first
issue is therefore overruled.

Sixth Amendment Violations
In his second issue, Mitchell argues the trial court's admission of the testimony of Myers,
Martinez, and Gazaway concerning the out-of-court statements by Blake, Timothy, and Mitchell's
father violated his sixth amendment right to confrontation under the United States Constitution.
Mitchell, however, did not timely object to the admission of these witnesses' statements on the basis
the statements violated his sixth amendment right to confrontation. Texas Rule of Appellate
Procedure 33.1(a) requires that a complaint be presented to the trial court "by a timely request,
objection, or motion" as a prerequisite to presenting the complaint for appellate review. Tex. R.
App. P. 33.1(a). Although Mitchell objected to the admission of the witnesses' statements on
Confrontation Clause grounds, such objections did not come until the end of trial -- well after the
trial court had admitted the witnesses' testimony. By not making a timely objection at trial, Mitchell
waived his right to complain of this alleged error on appeal. See id. Mitchell's second issue is
overruled.

Extraneous Offense Evidence
In his third issue, Mitchell contends the trial court erred by not giving the jury a limiting
instruction when it admitted Gazaway's testimony concerning the game violations he initially
observed at the Amber Sky Motel, i.e., Blake's and Timothy's game tagging violations. Mitchell's
attorney asked the trial court to instruct the jury not to consider the tagging violations against
Mitchell unless it believed he committed the offenses beyond a reasonable doubt. He further asked
that the evidence be admitted for limited purposes. The trial court denied Mitchell's requests. 

 When a defendant properly requests a limiting instruction when evidence is admitted, one
must be given. Tex. R. Evid. 105(a); Rankin v. State, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996).
We review a trial court's failure to give a limiting instruction when it is properly requested under a
harmless error standard. Jones v. State, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996). Any error
that does not affect a defendant's substantial right must be disregarded. Tex. R. App. P. 44.2(b);
Jones, 944 S.W.2d at 653. Substantial rights are not affected by the erroneous admission of evidence
if the appellate court, after reviewing the record as a whole, has fair assurance that the error did not
influence the jury, or had but a slight effect. Solomon, 49 S.W.3d at 365. 

 We question whether Mitchell was even entitled to a limiting instruction regarding the
extraneous offenses of Blake and Timothy. In any event, even if we were to assume the trial court
erred by not giving a verbal limiting instruction regarding the extraneous offenses of Blake and
Timothy, we believe the error was harmless. The integrity of the process leading to Mitchell's
conviction was not affected by the lack of a contemporaneous limiting instruction in this case
because after Mitchell's request for such an instruction was denied, Gazaway testified that Mitchell
was not connected to Blake's and Timothy's extraneous acts. In fact, Gazaway testified that Mitchell
was never given a citation for any of the tagging violations. Given the circumstances, we hold that
the trial court's failure to give a contemporaneous limiting instruction did not have an injurious
effect or influence in determining the jury's verdict. Therefore, we overrule Mitchell's third issue. 

Conclusion


 Having overruled each of Mitchell's issues, we affirm his conviction.

 

 Catherine Stone, Justice 


DO NOT PUBLISH
1. Gazaway testified that the rifle actually belonged to Timothy.
2. When referring to the spot where the deer had fallen on the Harris property, Gazaway testified that "[p]retty
much looks like they were shot right there from all the kicking and damage and stuff that was done to the ground when
they were dying."